W. H.

---

# HENRY P. CLARKE'S APPEAL FROM PROBATE.

Third Judicial District, Bridgeport, Oct. Term, 1897. ANDREWS, C. J.,
    TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The question whether the language of a will works an equitable con-
    version of real estate into personalty, is one to be determined by
    the courts of the testator's domicil, in so far as the land in that
    State is concerned.
But such determination is not obligatory as a rule of decision, upon
    the courts of other States, in a controversy between different parties.
    in respect to the title or succession to lands there situate, either

under the principles of general jurisprudence or the Constitution and laws of the United States.

The identity of parties necessary to support an estoppel by judgment does not exist if the suitors do not occupy the same individual or representative capacity in each suit.

Equitable conversion results from the existence of a power to convert realty into personalty, or personalty into realty, which has not been exercised. There must be both the grant of a power and the imposition of a duty to make use of it.

The provisions of the will of a South Carolina testatrix reviewed, and *held* not to work an equitable conversion of her Connecticut real estate into personalty.

The rules of international comity do not require the courts of this State to accept the interpretation placed upon a will by the courts of the testator's domicil, where such interpretation directly involves the mode of passing title to lands in this State.

It is a general rule that what a court cannot enforce it cannot decree.

[Argued November 2d, 1897—decided January 5th, 1898.]

APPEAL from an order and decree of the Court of Probate for the district of Bridgeport, ascertaining the heir and distributee of the intestate estate of Julia Clarke, late of Columbia, South Carolina, deceased; taken to the Superior Court in Fairfield County and reserved by that court, *Elmer, J.*, upon a finding of facts, for the consideration and advice of this court. *Judgment affirming probate decree advised.*

The finding stated the following facts: Henry P. Clarke, the appellant, while domiciled in the State of South Carolina, intermarried with Julia Hurd, in the State of New York, in the year 1886, and the married couple immediately returned to the State of South Carolina, which then became their domicil of marriage. In 1889, a daughter, Nancy B. Clarke, was born, who still survives, and is the appellee herein. In December, 1893, another daughter, Julia Clarke, the distribution of whose estate is now in question, was born. There were no other children born of said marriage. On February 10th, 1894, the wife, Julia H. Clarke, died. On May 20th, 1894, the daughter, Julia Clarke, died, leaving no creditors. At all times since said marriage the State of South Carolina has been the domicil of the appellant and his family.

During coverture and at the days of the dates thereof, Julia H. Clarke executed the following will and codicil:

WILL.

"I, Julia H. Clarke, wife of Henry P. Clarke, residing near Eastover, in Richland county, State of South Carolina, being of sound and disposing mind and memory, do make and ordain this my last will and testament and hereby revoke all other wills by me at any time heretofore made.

"First. I direct that all my just debts and my funeral expenses shall be fully paid by my executor hereinafter named.

"Second. I direct that a portion of my estate sufficient to produce one thousand dollars ($1,000) annually, shall be safely invested by my executor and the said one thousand dollars be paid annually to my father, S. H. Hurd, now of New York, in quarterly payments, during the term of his natural life.

"Third. I give and bequeath to Mrs. Laura Sherwood, of Bridgeport, Connecticut, the sum of ten thousand dollars, ($10,000).

"Fourth. I give and bequeath to Miss Agnes C. Patterson, of said Bridgeport, the sum of five thousand dollars, ($5,000).

"Fifth. The rest, residue and remainder of my estate, real and personal, of whatever description or wheresoever situated, I give, devise and bequeath as follows: One half thereof to my husband, Henry P. Clarke, and one half thereof to my said husband in trust for my daughter, Nancy, until she becomes twenty-five years of age, and then to pay the whole sum over to her. But if she shall marry before that age with the consent and approval of her father, or in case of his death, with the consent and approval of her then guardian, then I direct that one half of her share shall be paid to her upon her marriage and the other half when she becomes twenty-five.

"In case I shall leave surviving me one or more children beside my daughter Nancy, then I direct that the said rest,

residue and remainder of my estate shall be divided equally among my said husband and all of my children, share and share alike, my husband and my children sharing per capita, and the shares of said children to be held in trust as above provided in the case of Nancy as being the only one. And I give, devise and bequeath the said rest, residue and remainder as aforesaid, to each and to their heirs and each of them forever.

"I constitute and appoint my said husband, Henry P. Clarke, to be executor and trustee of this my will, and direct that no bonds be required of him under either appointment.

"In witness whereof, I have hereunto set my hand and seal at Bridgeport, Connecticut, this twenty-fifth (25th) day of May, A. D. 1891.

"JULIA H. CLARKE.    (Seal)"

### CODICIL.

"I, Mrs. Julia H. Clarke, wife of Henry P. Clarke, formerly residing near Eastover, in the county and State aforesaid, but now residing in the city of Columbia, of said county and State, having made my last will and testament bearing date the twenty-fifth day of May, A. D., 1891, at Bridgeport, in the State of Connecticut, do now make this codicil to be taken as a part of the same:

"First. I hereby ratify and confirm my said will in every respect, save as far as any part of it is inconsistent with this codicil.

"Second. I hereby revoke the third *item* of said will, and in lieu thereof I will and direct that a portion of my estate sufficient to produce five hundred dollars annually, shall be safely invested by my executor, and the said five hundred be paid annually in quarterly payments to Mrs. Laura Sherwood, of Bridgeport, Conn., during the term of her natural life.

"Third. I further will and direct that after the death of Mrs. Laura Sherwood, that the portion of my estate which shall at that time be invested for her benefit under the

second item of this codicil, shall then become a portion of my estate, and is hereby disposed of as directed in item five of my said will; and I further direct that if said Mrs. Laura Sherwood shall die before my death, then the investment directed for her benefit under item two of this codicil shall be and is hereby disposed of as directed in item five of my said will.

"Fourth. I further will and direct that after the death of my said father, S. H. Hurd, that the portion of my estate which shall at that time be invested for his benefit, as directed in item two of said will, shall then become a portion of my estate, and shall be disposed of as directed in item five of my said will; and I further direct that if my said father shall die before my death, then the investment directed for his benefit in said item two shall be disposed of as directed in item five of my said will.

"In witness whereof I, the said Julia H. Clarke, have hereunto subscribed my name and set my seal to the foregoing codicil of four items, at Columbia, in the said State, this the 11th day of November, A. D., 1893.

"JULIA H. CLARKE, (L. S.)"

Said will and codicil were duly established in the Court of Probate for Richland county in the State of South Carolina, and copies thereof have become part of the files and records of the Court of Probate for the district of Bridgeport, pursuant to the provisions of § 550 of the General Statutes.

The daughter, Julia Clarke, owned no property in Connecticut at the time of her decease, except such as had or should come to her under her mother's will. The property of the mother, Julia H. Clarke, possessed by her at the time of her decease, consisted of $825.25 in personalty, the home plantation in South Carolina, valued at $20,000, and real estate in Bridgeport, in this State, valued at $138,000. This last mentioned property was distributed to her the day before her death in a partial distribution of the estate of her grandfather, P. T. Barnum, who died April 7th, 1891, leaving a will under which she took a legacy of $100,000 (paid

before said partial distribution), and one sixth of the residue of his estate.   She owed debts amounting to $30,000 at the time of her decease.

The estate of the daughter, Julia Clarke, referred to in the petition to the Court of Probate, consisted of an undivided one third interest in the real estate so as above distributed to her mother.   The value of the said Julia H. Clarke's entire interest in the estate of her grandfather was several hundred thousand dollars.   Both real estate and personal property of large value remained in the said Barnum residue, at the death of the mother, Julia H. Clarke, for future distribution.   The real estate so remaining is situated in Connecticut, New York and Kansas.

Henry P. Clarke (the appellant herein), " as executor of the last will and testament of Julia H. Clarke and trustee of the estate of Nancy B. Clarke, his infant daughter, under said will," brought suit against Nancy B. Clarke (the appellee herein) in the Circuit Court for the fifth judicial circuit of South Carolina, praying for the " judgment and direction of the court in regard to the true construction of said will, and especially the fifth and residuary paragraph thereof, and as to his powers and duties as such executor and trustee under said will in the premises, and for such further relief as may be just and proper."   A guardian *ad litem* was appointed for the infant defendant, who duly answered, and, after hearing had, the court " ordered, adjudged and decreed that the will of the testatrix, Julia H. Clarke, worked an equitable conversion into personalty at the time of her death of all her real estate of whatsoever description and wheresoever situated, and that the plaintiff as executor, receive, administer and account for the same as personalty, and that he is by the said will authorized and empowered to sell and convey the same for the purpose of executing said will, and that he have leave to apply for further orders and directions upon the foot of this decree."

This judgment was upon appeal subsequently affirmed by the court of last resort in South Carolina, as will appear by the report thereof in 46 S. Car. 230, which was made by ref-

erence a part of the record in this cause; and said decision was considered by the Court of Probate for the district of Bridgeport.

By the law of the State of South Carolina, the court to which the action was brought had jurisdiction both of the persons and of the subject-matter of that suit; and by a like law the appellant shared equally with his surviving child in the distribution of the estate of the deceased.

The intestate was at the time of her death domiciled in the State of South Carolina and her estate has, ever since the first day of February, 1897, been in due process of settlement in the proper courts of that State.

Prior to May 29th, 1897, letters of administration had been granted by the Court of Probate for the district of Bridgeport to Henry P. Clarke, as administrator of the estate of Julia Clarke, late of Columbia, South Carolina, but leaving real estate in said district, deceased intestate; and he had duly qualified as such. On May 29th, 1897, he as such administrator made written application to said Court of Probate, stating that divers persons claimed to be entitled to have said real estate set out and distributed to them, and praying that the court might hear their claims and ascertain to whom the estate should be set out and distributed. Actual notice of this petition and of the time set for the hearing thereon was given to Nancy B. Clarke, and John H. Perry, Esq., was appointed by the Court of Probate as her guardian *ad litem.* After a full hearing, a decree was passed on July 3d, the material part of which is as follows: "Upon such hearing, this court finds that the intestate was domiciled in the State of South Carolina at the time of her decease; that the entire inventoried assets of her estate in this State consist of an undivided interest in certain real estate, situated in the town of Bridgeport, of the value of about $  , which said interest was derived from the will of her mother, Julia H. Clarke, who died about four months prior to the decease of the intestate, domiciled in the State of South Carolina, an exemplified copy of whose will 'and the decision of the Supreme Court of South Carolina inter-

preting the same in a case in which the petitioner herein was plaintiff and Nancy B. Clarke was defendant,' is on file and of record in this court and hereby referred to, and whose estate is as yet unsettled and undistributed. Wherefore this court finds and decrees that the sole heir and distributee of the estate of the intestate is her aforesaid sister, Nancy B. Clarke."

From this decree Henry P. Clarke appealed to the Superior Court, stating that he was a citizen of South Carolina, and the father and only surviving parent of said Julia Clarke, deceased, and an heir at law and distributee of her estate, and therefore aggrieved by the decree. By order of the Court of Probate notice of the appeal was duly given to Henry P. Clarke, administrator on said estate, and to John H. Perry, guardian *ad litem* of Nancy B. Clarke, and also, by personal service of a copy of the process, to Nancy B. Clarke, at the place where she was temporarily residing, to wit, at Asheville, North Carolina. On the return of the appeal to the Superior Court, Mr. Perry was also there appointed her guardian *ad litem*, and " authorized and directed to appear and defend said action in her behalf."

The reasons of appeal were as follows :—

I.

1. The estate of the intestate in the State of Connecticut consisted of property all of which is for purposes of distribution, and for the purpose of the ascertainment of heirs and distributees, personal estate.

2. The intestate was, at the time of her death, domiciled in the State of South Carolina, and her estate has ever since the first day of February, 1897, been in due process of settlement in the proper courts of that State.

3. By the laws of South Carolina, the appellant was and is entitled to a distributive share in all the personal estate of the intestate.

II.

The court erred in assuming to ascertain the heirs and distributees of the intestate, as all of the estate of the intestate for the purpose of the hearing then before the court con-

sisted of personal property, and the courts of South Carolina alone had jurisdiction to fix and ascertain the heirs and distributees.

### III.

The court erred in not dismissing the petition for want of jurisdiction to grant the relief prayed for in the application.

Paragraphs 2 and 3 of the first reason assigned were admitted by the reply, and the residue of the reasons assigned were denied.

*LeRoy F. Youmans* of South Carolina, with whom was *John S. Verner*, also of said State, and *Goodwin Stoddard*, for the appellant.

*First.* The interpretation of the will in question by the highest court of the domicil of the testatrix, is binding upon the courts of this state. The rule that the *lex rei sitæ* governs the disposition by will of real estate, applies *only* to the capacity of the testator and the formalities of execution. A will is a conveyance, but in this case no dispute exists as to the validity of the instrument or its due execution. The ascertainment of the intention of a testator as expressed by the words he selects, is an entirely different matter, and is the peculiar function of the courts of the domicil. Sto. Confl. of Laws, §§ 474, 479 *b.;* 1 Jar. on Wills, pp. 1–3 and notes. The fact that the actual execution of the will took place outside the State of South Carolina, does not alter the case. The domicil of Mrs. Clarke after her marriage was continuously in South Carolina. *Depuy* v. *Wurtz,* 53 N. Y. 556 ; *Caulfield* v. *Sullivan,* 85 id. 153 ; *Harrison* v. *Nixon,* 9 Pet. 483, 504, 505. The rule that a will is to be interpreted according to the law of the testator's domicil, *is not limited to dispositions of his personal estate, but seems to apply in all cases, except where it appears that he expressed his meaning with reference to the law of some other place.* Sto. Confl. of Laws, 651 ; *Trotter* v. *Trotter,* 4 Bli., N. S. 502, 3 Wils. & S. 407 ; *Wallis* v. *Brightwell,* 2 P. W. 88 ; *Max-*

*well* v. *Maxwell*, L. R. 4 H. L. 506 ; *Caulfield* v. *Sullivan*, *Harrison* v. *Nixon*, *supra*. *Ford* v. *Ford*, 80 Mich. 42 (1890), is exactly in point and fully supports the appellant's contention. See also *Leavens* v. *Butler*, 8 Port. (Ala.) 394 ; *Crusoe* v. *Butler*, 36 Miss. 150 ; *Guerard* v. *Guerard*, 73 Ga. 506 ; *Washburn* v. *Van Steenwyk*, 32 Minn. 336 ; *Danelli* v. *Danelli*, 4 Bush (Ky.), 51 ; *Wilkins* v. *Allen*, 18 How. 385 ; *Armstrong* v. *Lear*, 8 Pet. 52 ; *Parsons* v. *Lyman*, 20 N. Y. 103 ; *Cross* v. *Trust Co.*, 131 id. 330 ; *Dammert* v. *Osborn*, 140 id. 30 ; *Chamberlain* v. *Napier*, L. R. 15 Ch. Div. 630 ; 2 Greenl. Ev. § 671. The matter of construction of this will is *res judicata*. The Supreme Court of South Carolina had jurisdiction of the parties, and of the subject-matter, which was the interpretation of the instrument. The controversy was between the same parties and over the same matter. A party to that suit cannot now claim that a different construction be put upon the will. *Washburn* v. *Steenwyk*, *supra*. Courts of equity habitually, when they have jurisdiction of the parties, decree the conveyance of lands in another State or country ; *Penn* v. *Lord Baltimore*, 1 Ves. 443 ; *Newton* v. *Bronson*, 13 N. Y. 587 ; *Wood* v. *Warren*, 15 N. J. Eq. 81 ; and our own court expressly notes the difference between direct interference with lands in this State, and such an indirect effect upon them, in *Farmers' L. & T. Co.* v. *Postal Tel. Co.*, 55 Conn. 334.

*Second.* But upon the merits of the case the decision of the South Carolina court was correct. The will worked an equitable conversion of the realty. 1 Smith & Tudor, Lead. Eq. Cas. 1118, 1120 ; 1 Pom. Eq. Juris. 371 ; 2 Jar. on Wills, 170 ; Bisph. Eq. § 307 ; *Hammond* v. *Putnam*, 110 Mass. 232, 236 ; *Greenland* v. *Waddell*, 116 N. Y. 234, 240 ; *Perry* v. *Logan*, 5 Rich. Eq. (S. Car.) 202 ; *Craig* v. *Leslie*, 3 Wheat. 563. The question is simply and solely one of *intention*. Bishp. Eq. § 312 ; *King* v. *King*, 13 R. I. 501 ; 3 Pom. Eq. Juris. 1160 ; *Wurts* v. *Page*, 19 N. J. Eq. 365. This intention to change real property into personal, may be shown by necessary implication, as well as by positive direction to sell. *Hunt's and Lehman's Appeal*, 105 Pa. St.

128; 3 Pom. Eq. Juris. § 1160; 2 Beach, Eq. Juris. § 523; 2 Woerner on Law of Adm. 726; *King* v. *King, supra;* *Given* v. *Hilton*, 95 U. S. 592. The words "sum" and "paid over" are applicable *only* to money, and show clearly the intention of the deceased. They are especially strong when taken with the context. Moreover, the words used have received a judicial interpretation. *Leake* v. *Watson*, 60 Conn. 498, 508; *Delafield* v. *Barlow*, 107 N. Y. 535, 539; *Going* v. *Emery*, 16 Pick. 116; *Dodge* v. *Williams*, 46 Wis. 70, 96; *Wurts* v. *Page, supra;* *Green* v. *Johnson*, 4 Bush (Ky.), 164. It was clearly Mrs. Clarke's intention and purpose that her husband and daughter Nancy should share equally in her estate. She knew that most of her estate then consisted of realty in the States of Connecticut, New York and Kansas, and that by the law of this State, upon the death of her child intestate, the share would go in its entirety to a surviving brother or sister; but that by the law of her domicil it would be divided equally between the surviving child or children and her husband; hence the provision in her will for equitable conversion. No importance attaches to the fact that no conversion had actually been made before the child's death. 2 Woerner's Amer. Law of Adm. p. 726; 1 Wms. Exrs. 802, note; *Wurts* v. *Page, supra;* *Smith* v. *McCreary*, 3 Ired. Eq. 204; *Eby's Appeal*, 84 Pa. St. 241; *Fisher* v. *Banta*, 66 N. Y. 468, 476; *Lent* v. *Howard*, 89 id. 169, 176.

*John H. Perry*, with whom was *Winthrop H. Perry*, for the appellee.

*First.* The claim of equitable conversion has no substantial foundation in the language of the will. There is no direction to sell or convert, or to do either, imperatively or otherwise; and we find no rules or precedent, aside from this South Carolina decision itself, which would warrant an imperative implication from the language used. 3 Red. on Wills, 140; Wig. on Wills, 156; 2 Sto. Eq. § 1214; 3 Pom. Eq. Juris. §§ 1159, 1160; Beach, Eq. § 523; 3 Jar. on Wills, 176, 589; *Hammond* v. *Putnam*, 110 Mass. 232;

*King* v. *King*, 13 R. I. 501; *White* v. *Howard*, 46 N. Y. 144; *Hobson* v. *Hale*, 95 id. 588; *Hale* v. *Hale*, 125 Ill. 399; *Moore* v. *Robbins*, 53 N. J. Eq. 137; *Hunt's and Lehman's Appeal*, 105 Pa. St. 108; *Lynn* v. *Gephart*, 27 Md. 547; *Orrick* v. *Bœhm*, 49 id. 72; *Carr* v. *Branch*, 85 Va. 597; *Mills* v. *Harris*, 104 U. S. 626; *Allen* v. *Watts*, 98 Ala. 384; *Ford* v. *Ford*, 70 Wis. 19; *Ford* v. *Ford*, 80 Mich. 45; *Neus* v. *Davidson*, 49 Minn. 469; *Eueberg* v. *Carter*, 98 Mo. 647; *Wheeless* v. *Wheeless*, 92 Tenn. 294; *James* v. *Throckmorton*, 57 Cal. 368.

*Second.* But the appellant says, that whether the South Carolina decision be right or wrong, it *proprio vigore*, makes Connecticut land South Carolina money, and leaves to this court the simple privilege of concurrence; that the question is *res adjudicata.* This claim is erroneous. Real estate must be conveyed according to the laws of the State in which it is situated. *Farrel Foundry* v. *Dart*, 26 Conn. 376; *Irwin's Appeal*, 33 id. 128; *Chappel* v. *Jardine*, 51 id. 64; *Farmers' L. & T. Co.* v. *Postal Tel. Co.*, 55 id. 334; 1 Redf. on Wills, 398; 1 Jar. Wills, 1; Whart. Confl. of Laws, §§ 273, 274, 278; *U. S.* v. *Fox*, 94 U. S. 315; *U. S.* v. *Crosby*, 9 Cranch, 115; *Kew* v. *Moon*, 9 Wheat. 565; *McCormick* v. *Sullivant*, 10 id. 192; *Suydam* v. *Williamson*, 24 How. 427; *Arnot* v. *Griggs*, 134 U. S. 316; *Hawley* v. *James*, 7 Paige Ch. 213; *Hosford* v. *Nichols*, 1 id. 220; *Nelson* v. *Potter*, 58 N. J. L. 324; *Brook* v. *Frank*, 51 Ala. 85; *Jennings* v. *Jennings*, 21 Ohio St. 56; *Abrams* v. *Moseley*, 7 S. Car. 150. It is for this court to determine whether, under Connecticut law, Mrs. Clarke intended and has sufficiently directed an imperative out and out sale and conversion of land in this State. *White* v. *Howard*, 46 N. Y. 144; *White* v. *Howard*, 38 Conn. 342. See also the following cases, the first three of which concerned the same will and estate: *Penfield* v. *Tower*, 1 N. Dak. 216; *Lee* v. *Tower*, 124 N. Y. 370; *In re Tower's Estate*, 49 Minn. 371; *Applegate* v. *Smith*, 31 Mo. 166; *Williams* v. *Nichols*, 47 Ark. 254. The cases of *Hale* v. *Hale*, 137 Mass. 168, *Hobson* v. *Hale*, 95 N. Y. 588, and *Hale* v. *Hale*, 125 Ill. 399, concerned the same will and estate. The

cases of *Wurts* v. *Page*, 19 N. J. Eq. 365, *Page's Estate*, 75 Pa. St. 87, construed the same will and affected the same estate. The cases of *Osburn's Appeal*, 104 Pa. St. 637, *Mc-Cartney* v. *Osburn*, 118 Ill. 403, 121 id. 404, and *Warner's Estate*, 130 Pa. St. 365, concerned the same will and estate. In all these cases there was no suggestion that an earlier decision in one State could affect the title to land in another; but all agreed that such questions were to be adjudicated by the court of the State in which the land was located.

The appellant relies upon the conclusiveness of the South Carolina decision, on two grounds, *viz: res judicata, and lex dômicilii*. In relation to *res judicata*, the rule undoubtedly is that the former adjudication must have been: (1) between the same parties; (2) upon the same question; (3) which question the court had power and jurisdiction to determine. The parties in the two cases are not the same; the question is not the same; and the South Carolina court had no power or jurisdiction to determine the question submitted to it so as to affect *Connecticut lands*, and therefore the third essential of an effective *res judicata* fails. *Cooper* v. *Reynolds*, 10 Wall. 316; *Carpenter* v. *Strange*, 141 U. S. 103; *Farmers' L. & T. Co.* v. *Postal Tel. Co.*, 55 Conn. 334; *McCartney* v. *Osburn*, 118 Ill. 403, 121 id. 408; *Nelson* v. *Potter*, 50 N. J. L. 324; *Thompson* v. *Whitman*, 18 Wall. 487. In relation to the appellant's claims as to the conclusiveness of the *lex domicilii*, it can only be said that if the court of South Carolina is given the most liberal construction accorded in any of the authorities cited by him, it may *interpret* in a limited and qualified sense; it cannot import such a *construction* as is claimed here. And. Law Dict. 240, 564; *Proprietors, etc.*, v. *Jones*, 36 N. J. L. 206, 209; *Atkinson* v. *Staigg*, 13 R. I. 725; *Lee Bros., etc.*, v. *Cram*, 63 Conn. 433, 438.

BALDWIN, J. Julia Clarke of South Carolina died there in infancy, and at the time of her decease was the owner of real estate in Connecticut. Her interest in it was derived from the will of her mother, Julia H. Clarke, who was also

a citizen of South Carolina. This will was admitted to probate in the proper court of that State, and a suit for its construction afterwards brought there, before a court of equity having jurisdiction of the parties and the subject-matter, which resulted in a decree to the effect that it worked an equitable conversion of all the real estate of the testatrix, wherever situated.

If this be the true construction of the will, the decree of the Court of Probate for the district of Bridgeport, from which the present appeal is taken, was erroneous.

The appellant contends that, upon this point, the South Carolina decree is conclusive, both on the ground that the matter thus became *res adjudicata*, and because to hold otherwise would be to deny full faith and credit to the judgments of a sister State.

The only parties to that proceeding were Henry P. Clarke as executor of the will of Julia H. Clarke, and trustee of the estate of Nancy B. Clarke, his infant daughter, under the will, as plaintiff, and Nancy B. Clarke as defendant.

The parties to the present proceeding are Henry P. Clarke as the sole appellant, and as appellees Henry P. Clarke as administrator of the estate of Julia Clarke, deceased, by virtue of letters granted by the Court of Probate for the district of Bridgeport, Nancy B. Clarke, and John H. Perry, Esq., her guardian *ad litem* by appointment of that court.

It is obvious that the parties thus before us are not the same as the parties to the South Carolina action. There Henry P. Clarke did not appear in his own right, and no one was brought in as a representative of the estate of his deceased daughter, Julia. Here Henry P. Clarke does appear in his own right, and is also present as the proper representative of that estate, but has not been brought in as the executor of his wife's will, or as a trustee under it for his daughter Nancy.

If the South Carolina decree had been that the terms of the will did not work a conversion, Henry P. Clarke, in his own right, would have been free to contest that decision in other proceedings, and so would the administrator of the

estate of his daughter Julia. One who occupies a repre-
sentative position is, in that capacity, a person totally dis-
tinct, in the view of the law, from himself individually. In
an action by an administrator, the plaintiff's admissions,
made before the grant of administration, cannot be received.
*Rockwell* v. *Taylor*, 41 Conn. 55. Had Mr. Clarke, before
bringing his action in South Carolina, taken out administra-
tion there on his daughter's estate, and then made himself
in that capacity one of the defendants, it is doubtful whether
the judgment would have bound him, as administrator of her
estate in Connecticut, when afterwards entrusted with that
position, under the laws of another sovereignty, by the Court
of Probate for the district of Bridgeport. Story on the Con-
flict of Laws, § 522. Had a different person been appointed
administrator, in each State, it is certain that there would
have been no privity between them. *Stacy* v. *Thrasher*,
6 How. 44. Estoppels must be mutual. Nancy B. Clarke
cannot be bound by the South Carolina decree unless Henry
P. Clarke was bound by it; and Henry P. Clarke was bound
by it only as executor and trustee under her mother's will.
Nor can Henry P. Clarke, as a Connecticut administrator,
be bound by that decree, as a rule for distributing an estate
which, during the whole course of the suit in which the de-
cree was rendered, had no representative to protect its inter-
ests before the court.

A comparison of the South Carolina record with that in
the case at bar shows, also, that the subject-matter of these
actions is not the same.

The South Carolina court was called upon to construe the
will of a citizen of South Carolina, disposing of lands in that
and other States. It had jurisdiction to make a final and
conclusive disposition of the questions presented so far only
as it had power to compel obedience to its decree, or as its
judgment derived an additional force from the Constitution
and laws of the United States.

Courts sit to determine causes and to enforce their deter-
mination. It is a general rule that what they cannot enforce
they cannot decree. So far as concerns the extra-territorial

effect of foreign judgments, this rule is a principle of international law, subject only to such exceptions as may be founded on the consent of parties, or the exercise of judicial comity in the rare cases where no one country can accomplish the ends of justice by its own unaided authority. Dicey on Confl. of Laws, 38–42.

The courts of South Carolina could settle the construction of Mrs. Clarke's will, so far as related to the real estate in that State, and to the whole of her personal estate. But this personal estate is that only which she owned at the time of her decease, together with any for which the executor might become accountable, by a lawful conversion of realty into personalty. They could not reach out into other States and issue process to authorize the seizure there of lands to which she had a title. They could only exercise a restraining force upon the parties who were before the court, and only upon them in their relations to each other. *Carpenter* v. *Strange*, 141 U. S. 87, 105.

Bearing these principles in mind, it is not difficult to ascertain the subject-matter presented to their consideration, and disposed of by the judgment which they rendered. It was a definition of what by the laws of South Carolina was the power, duty and estate of the executor and trustee under the will, as between him and Nancy B. Clarke. It was this and nothing more, because the plaintiff could submit to them nothing more.

Whether he had any power, duty, or estate, with respect to lands situated in another State, depended upon the laws of that State. Succession to the real estate of a deceased person is regulated at the will of the sovereign within whose territory it is embraced. It has always been regarded as a matter of grave political consequence. *Birtwhistle* v. *Vardill*, 7 Cl. & Fin. 895. Ownership of land controls its occupancy, and largely influences the character of the population. It determines the source to which governments ordinarily look for their surest if not their principal means of financial support. It had, in former times, in England and in all her American colonies, an intimate relation to the

right of suffrage, and in this State is still a qualification for it under at least one of our municipal charters.   9 Special Laws, 431.

The laws of Connecticut must decide how the lands of Connecticut may be conveyed and inherited, and they make particular provisions, in case of intestacy, for the preservation of ancestral real estate in the line of family descent.  General Statutes, § 632.   Upon the death of a landowner, whether a citizen of the State or not, whoever takes title by succession takes it because these laws concede it to him, not as a right but as a privilege.   It is on this basis that succession taxes are upheld.   They constitute part of the terms upon which the grant of the State is conditioned.   *Mager* v. *Grima*, 8 How. 490.   A devisee takes by an artificial perpetuation of a testator's will, which survives him for that purpose with a vitality conferred and created by positive law.   By that same law the form of its expression is prescribed, and limited.   Title to land can be conveyed under a testamentary power, only when such a conveyance is sufficient under the laws of the territorial sovereign.

The personal representative of Mrs. Clarke rightfully sought the direction of the courts of her domicil as to the effect of her will upon the estate for which he was or might become accountable before them.   As to that matter, the courts of Connecticut could not instruct him.   *Russell* v. *Hooker*, 67 Conn. 24.   This was the subject-matter of the South Carolina action, and the decree rendered is conclusive upon those who were parties to it.   On the other hand, the subject-matter of the case before us is the ascertainment of those who by the laws of Connecticut are entitled to succeed to certain Connecticut lands which form part of an intestate estate in course of settlement before a Connecticut court of probate.   As to this the courts of South Carolina could give no instructions, and were asked for none.   The whole decree must be taken together, in determining its true scope and meaning.   The adjudication that the will worked an equitable conversion of all the real estate of the testatrix, wheresoever situated, is immediately followed by

the adjudication "that the plaintiff, as executor, receive, administer and account for the same as personalty, and that he is by the said will authorized and empowered to sell and convey the same for the purpose of executing said will, and that he have leave to apply for further orders and directions upon the foot of this decree." It is not to be presumed that the court intended to go beyond its jurisdiction. In directing the plaintiff, as executor, to receive, administer and account for all his wife's real estate as personalty, his duty as to the real estate in South Carolina, and as to the proceeds of any sales that might be made, under the terms of her will, of real estate situated out of the State, was plainly laid down. These were the instructions which he needed for his protection, and if, in fact, he hereafter receives, under the letters testamentary issued to him by the Probate Court of South Carolina any moneys to be accounted for before that court from sales of real estate in other States, they will regulate his disposition of them. The decree relates solely to his powers and functions as an executor, and does not speak of those belonging to him as a trustee. The conversion was to be accomplished before any transfers were made to constitute the trust estate. The only subject of adjudication was the proper mode of administering upon the estate of Mrs. Clarke, so far as it was or should be in course of settlement before the courts of probate of her own State. Those courts could only deal with the property that had come or might come under their control. *McCartney* v. *Osburn*, 118 Ill. 403.

The South Carolina decree, therefore, did not estop Nancy B. Clarke from urging in this action in support of her claims as heir of Julia Clarke under the Connecticut statute of distributions, that the real estate to be distributed was held by her sister, as real estate, under their mother's will. Those questions had never before been litigated between her and Henry P. Clarke.

It is unnecessary to inquire whether, if he had been a party individually to the South Carolina suit, and the principal administrator of the estate of Julia Clarke had also been brought in, the court would have had jurisdiction to

make a final and conclusive determination as to the effect of the will upon lands in other States and their descent upon the decease of those in whose favor the testatrix disposed of them.    Under the conditions which in fact existed, its determination did not constitute a binding rule of decision for the Court of Probate for the district of Bridgeport in the present proceeding, either under the principles of general jurisprudence or the Constitution and laws of the United States.    *Aspden* v. *Nixon*, 4 How. 467, 497.

The decree of that court, from which this appeal is taken, treated the real estate in this State left by Julia Clarke as being real estate to all intents and purposes.    If, in truth, it had become before her death the subject of an equitable conversion, this decree must be reversed; and the reasons of appeal have brought this point directly before the Superior Court for decision.

Equitable conversion results from the existence of a power to convert realty into personalty, or personalty into realty, which has not been exercised.    There must be both the grant of a power and the imposition of a duty to make use of it.

The will and codicil of Mrs. Clarke directed her executors to pay her debts; to invest a portion of her estate sufficient to produce an annuity of $1,000, to be paid to her father during his life; to make a similar investment of enough to yield an annuity of $500 to be paid to another; and to pay a certain legacy of $5,000.    As to the residue of her estate, real and personal, wherever situated, she provided that it should "be divided equally among my said husband and all of my children, share and share alike, my husband and my children sharing *per capita*, and the shares of said children to be held in trust."    The husband was made the devisee and legatee of the children's shares in trust for each until the child should become twenty-five years of age, upon which event he was "to pay the whole sum over to" such child, and should the latter previously marry with his approval, or in case of his death, with that of a proper guardian, half of the

"share" of such child was to "be paid" to him upon his marriage, and "the other half" when he became twenty-five. These provisions were followed by a devise and bequest of the residuary estate "as aforesaid, to each and to their heirs and each of them forever."

The personal estate in possession of the testatrix at the the time of her decease, was inventoried at only $825, but she was also entitled to a residuary interest worth over one hundred thousand dollars, in a large estate consisting of both realty and personalty, in course of settlement in this State. It was, therefore, uncertain whether it would be necessary to sell any of her real estate to meet debts and legacies, and we concur with the Supreme Court of South Carolina in the opinion that there was nothing in the will to work the out and out conversion for which the appellant contends, unless that be the result of the dispositions of the residuary clause. *Clarke* v. *Clarke*, 46 S. Car. 230, 243.

It was the view of that court that this result did follow from the commingling of the entire residuary estate, both real and personal, in one common mass, and the directions to divide it into equal parts, one to belong to the husband, and one to him in trust for each child, and that he "pay over the whole sum" of each daughter's share to her when she becomes twenty-five, or in case of her marrying sooner, with the consent of her father or guardian, that "one half of her share shall be paid to her upon her marriage, and the other half when she becomes twenty-five." We have considered the grounds for this conclusion set forth in the learned opinion MR. JUSTICE POPE, with the care demanded by our respect for the distinguished tribunal for which he speaks, and find ourselves unable to yield assent to the train of reasoning, so far as it may apply to the effect of the will upon the real estate in Connecticut.

In every case in which a testator, owning both real and personal estate, after making particular provisions for debts and legacies, disposes of all the residue of his estate in favor of one or more persons, this residue may be said to be thus commingled or blended in one common mass. He gives it

as an entirety; and, unless he otherwise directs, it is given in the precise condition in which it exists, whether real or personal. Mrs. Clarke used apt terms to convey real estate. The phrase "I give, devise and bequeath," is used in the beginning of the residuary clause, and repeated at its close with the addition of words of limitation descriptive of a fee-simple estate in lands, and unnecessary for any other purpose. The direction for an equal division between her husband and children is naturally applicable to a division of the property left, rather than of its proceeds. The only provisions, indeed, which are particularly relied on in support of the appellant's claims are those as to paying over the whole sum belonging to each child's share, upon her attaining the age of twenty-five, and, in the event of her marriage under certain conditions, half of her share at an earlier period.

It is unquestionable that these terms are appropriate only to a payment of money, but they must be read in connection with the rest of the will. No payment was directed until the beneficiary married or attained the age of twenty-five, and it was then to be made by the trustee, not by the executor. If a conversion of realty into personalty were requisite in order to raise the sums so payable, it could not be requisite until one of those events was in immediate prospect. To turn either real or personal property into money at an earlier time and keep it on hand as money, uninvested, would be of no benefit to the *cestui que trust*. No power of sale to be implied under the circumstances of the case could be exercised by the executor before the estate passed into the hands of the trustee. As the executor was not to make the payments in question, they could furnish no occasion for him to make a conversion; and unless the testatrix cast either upon him or upon the trustee a power and duty of immediate conversion, the decree of the Court of Probate was correct.

The doctrine of equitable conversion is simply an application of the fundamental principle that equity regards that as done which ought to be done. Unless a sale of the Connecticut real estate ought to have been made as soon as

practicable after the decease of the testatrix, it is not to be regarded as having the character of personal estate. If a sale ought to have been made, it is because a power to sell is implied from the terms of the residuary clause, and is necessary to give that clause its due effect. The heirs at law of Julia Clarke are not to be excluded from the inheritance by anything short of a clear implication from the provisions of the will under which her estate was derived. We are unable to find any implication of a power to make such a sale, in favor of Mr. Clarke, either as executor or as trustee. The dominant and controlling words in the fifth article of the will are those by which the testatrix gives, devises, and bequeaths her residuary estate, "real and personal of whatsoever description and wherever situated," to her husband and children, to be divided equally between them *per capita*, "to each and to their heirs and each of them forever." The provisions for a temporary trust in respect to the share of each child are subsidiary. They are for the sole benefit of the children, and it is highly improbable that they were intended to curtail the beneficial estate absolutely given to their father, by requiring that it should be turned into money, either before he received it or as soon as he received it. It is much more natural to suppose that the word "pay" was used for "transfer," and "sum" as the equivalent of what in the same sentence is described as a "share."

It is suggested that Mrs. Clarke must have known that her real estate was scattered through four States, and that the laws of some of these States as to the distribution of intestate estates differed widely from that of South Carolina; and therefore is to be presumed to have intended to provide for the event of the decease of one of her children during minority, by directing such a sale as would make their shares at once subject to the laws of her domicil. The appellant also contends that an obvious motive for directing such a conversion was securing the higher rate of income which would probably be derived from investments made in her own State, as well as the greater safety from having them more immediately under the eye of the trustee. It is

evident that both the will and codicil were prepared by counsel familiar with the ordinary terms of testamentary disposition. The codicil was executed at her own home, and the utmost solicitude was evinced in it to protect the interest of those who were to receive her residuary estate, by stating explicitly what the law would have sufficiently implied, that they should ultimately receive the funds set apart for the benefit of the two annuitants. Had it been the desire of Mrs. Clarke that her decease should be followed by an immediate sale of all her lands, her counsel could have found no difficulty in expressing this with equal distinctness.

The claim is made, and is not wholly without countenance in reported cases, that an intent to convert may be implied, in the absence of any positive direction to sell or of any absolute necessity to sell, if the will so blends together real and personal estate as clearly to show that the testator meant to create a common fund out of both, and to bequeath it as money. *Hunt's and Lehman's Appeal*, 105 Pa. St. 128, 141. No general residuary devise and bequest can be given such an effect, as respects lands in Connecticut, unless from the whole scheme of the will or the particular language employed a power of sale is clearly implied. Conversion is effected by sale. Equitable conversion is effected by a power to sell and a duty to sell. It is not enough to manifest an intent that lands shall pass as money, unless there is also, either in terms or by implication, a grant of the means of turning it into money. *Hobson* v. *Hale*, 95 N. Y. 588; *Hale* v. *Hale*, 125 Ill. 399, 17 Northeastern Rep. 470.

If the question were one not directly involving the mode of passing title to lands in this State, the rules of international comity might require us to accept the interpretation of the will established in the courts of South Carolina. *Rockwell* v. *Bradshaw*, 67 Conn. 8, 14. Such would be the case, for instance, if the point in controversy were whether a certain devise of lands in this State, which was inoperative under our laws for want of some statutory formality, if accompanied by a legacy to the heir at law, might not impose

upon him the personal obligation of electing whether to take the bequest and give effect to the devise by a voluntary conveyance, or keep his land and lose his legacy.   *Trotter* v. *Trotter*, 4 Bli., N. S. 502.   Similar considerations might apply to the construction of a legacy to a wife, in respect to whether it was in lieu of dower or not.   *Washburn* v. *Van-Steenwyk*, 32 Minn. 336; *Van Steenwyk* v. *Washburn*, 59 Wis. 483; *Lee* v. *Tower*, 124 N. Y. 370.   So, if the power claimed were one of appointment, that it affected lands in this State would not deprive the court of the domicil of its right to interpret authoritatively the meaning of the terms employed in the will, which though drawn in Connecticut was, by the codicil, republished in South Carolina.   But the power which that court has found to be implied from the language of the testatrix, is one of sale.   An appointment under a power of appointment as to lands, passes the title to them by virtue of the will, which is, itself, the conveyance, and the only one.   A power of sale, on the other hand, imports only a power to convey by an independent conveyance drawn and executed with all the formalities and subject to all the conditions incident to ordinary deeds.   That the will is duly executed for the disposition of real estate is sufficient to support the exercise of a testamentary power of appointment, in the manner directed by the testator; but it is not sufficient to dispense with a deed of the ordinary form, where the power is one to sell and convey.   The question then is no longer simply what wishes the testator has expressed, but whether he has so expressed them as to enable acts to be performed after his decease, by his authority, which will avail to effectuate these wishes according to the requirements of local law.   If the will in question worked a conversion, it is because the executor or the trustee could, under its provisions, have executed a deed sufficient under the laws of Connecticut, to transfer title to real estate. Whether this could have been done or not is necessarily a matter to be decided according to those laws, as they may be interpreted by the judiciary of Connecticut.   *White* v. *Howard*, 46 N. Y. 144, 159; Wharton on Confl. of Laws, § 597; *Page's Estate*, 75 Pa. St. 87.

The case of *Ford* v. *Ford*, 80 Mich. 42, in which the con-
struction given to a Wisconsin will by a Wisconsin court
(*Ford* v. *Ford*, 70 Wis. 19, 72 Wis. 621), as to its work-
ing an equitable conversion of the real estate of the tes-
tator situated in Michigan, was followed, stands upon two
grounds : that the decision of the court of the testator's
domicil was conclusive, and that it was correct.    The latter
was, of course, sufficient to support the judgment.    Con-
siderable reliance seems also to have been placed on the pro-
vision of the Code of Michigan that upon probate there of a
foreign will, affecting property in Michigan, it should be
disposed of according to the will "so far as said will may
operate upon it."    Similar weight was properly accorded in
*Guerard* v. *Guerard*, 73 Ga. 506, 509, to a section of the
Georgia code making the law of the place where any writing
is executed controlling as to its effect.    In *Crusoe* v. *Butler*,
36 Miss. 150, the deed of an executor under a power con-
ferred by an Alabama will was held to pass title to lands in
Mississippi, the power having been executed in a manner
which the courts of Alabama had adjudged to be sufficient,
although not in accordance with the law of Mississippi.
Here, however, the Alabama decision had been rendered in
a suit between the same parties or those with whom they
were in privity, and that in Mississippi was plainly justified
by the doctrine of *res adjudicata*.

One of the claims set up in behalf of Nancy B. Clarke re-
mains to be noticed.    It is that under the statute of uses no
effectual trust in the lands in question was created, since no
active duties were imposed upon the trustee.

This position is untenable.    The terms of the devise and
bequest of his daughters' shares to Mr. Clarke in trust, in-
vested him with the legal title, and sufficiently implied a
right to hold and manage these estates until the events
should occur upon which they were to be turned over to
their own control.    So far as respects the share of Julia
Clarke, her death in infancy has rendered the occurrence of
these events impossible; but that Mr. Clarke has now be-
come as to that the holder of a simple or naked trust, does

not affect the fact that his trust was originally an active one. The legal estate devolving upon him and the beneficial estate given to his daughter were vested in each upon the decease of the testatrix. Upon the death of Julia Clarke, her interest in any lands in this State under her mother's will passed to her sole heir at law, in whose favor the decree appealed from was made.

The Superior Court is advised to affirm the decree of the Court of Probate.

In this opinion the other judges concurred.