FULLER *v.* McKIM.

1. WILLS—CONSTRUCTION—EQUITY.

 In proceedings by the executors for the construction of a will which disposed of an estate consisting largely of real estate in a foreign jurisdiction subject to a long-term lease, where they will have practically no money in their hands to satisfy the bequests made until such real estate shall have been sold or enough realized from rents and income to satisfy the bequests, the validity of the trusts, which the executors have no means of satisfying, and the disposition of a residue that may never exist, are too speculative for the courts of this State to pass upon.

2. EQUITY—TRUSTS.

 The court of equity should not attempt to direct the disposition of a fund until it is within the control of the executors asking the instructions.

3. WILLS—HEIRS—PARTIES.

 Where the heirs and next of kin of the testator and other parties who may be interested in the distribution of the estate are not made parties to the proceedings by the executors, the court is not in a position to pass upon the trusts nor upon the disposition to be made of a possible intestate residue until such heirs and next of kin shall have a chance to be heard.

4. SAME—INTENT OF TESTATOR—CONSTRUCTION.

 Where the will provided for bequests largely in excess of testator's personal property, and directing postponement of the sale of real estate so long as the present lease might remain outstanding and in force, and also directing the bequests to be paid out of the rents and income and proceeds of such sale, it is *held,* to be the intent of the testator that the sale should be postponed so long as the present lease might be in force, but the direction to sell to become mandatory whenever it should cease to continue as an existing lease, and during such postponement the executors should receive the rents and income and apply them in accordance with the terms of the will.

5. SAME—CONSTRUCTION—COURTS—DOMICILE—INTENT.

    The courts of a testator's domicile are justified in construing
    the will to determine its intent, although the property
    disposed of may be largely real estate in a foreign juris-
    diction.

6. SAME.

    The courts of a testator's domicile have no power to deter-
    mine the effect of a will upon the title to lands in another
    State, and the executors should have applied to the courts
    of such State for a determination of their rights and in-
    terests in, and powers over, the lands in that State, as
    the tenure, mode of enjoyment, transfer, and descent of
    real property is regulated by the *lex loci rei sitæ*.

Appeal from Barry; Smith, J. Submitted April 15, 1914. (Docket No. 37.) Decided September 28, 1915.

Bill by Daniel E. Fuller and Leonard H. Evarts, as executors of the will of Julia S. Newman, deceased, against Eunice M. McKim and others for construction of said will. From the decree entered, complainants appeal. Reversed and decree entered in this court.

*Colgrove & Potter*, for complainants.

PERSON, J. Julia S. Newman died in this State on the 25th day of July, 1911, leaving a will by which she disposed of some $70,000, all in pecuniary legacies and trusts. When the will was made, on the 17th day of October, 1910, she was a resident of New York, and from the language of the instrument it was evidently her expectation that her property would be administered in accordance with the laws, and through the courts, of that State. Shortly thereafter, however, she came to Michigan, and her domicile was here at the time of her death. She left comparatively little property other than real estate in the city of New York, in fact, nothing except the personalty, appraised here at $2,286.15, out of which some $400 and more has been used for funeral expenses. There is no direct

proof of the value of the New York real estate, but in the lease to be hereinafter mentioned an option is given for its purchase at $125,000, and the circuit judge assumed, no doubt correctly, that such was its probable worth.

In the will, following the provisions for the direct legacies and the trust, all to be paid in money, are these directions, to wit:

"Eighteenth—I hereby authorize, direct and empower my executors and such of them as may qualify, and the survivor of them, to sell and dispose of all of the real estate of which I may die seized or possessed, whether in the State of New York or elsewhere, upon such terms and in such manner as to them shall seem best, but it is my wish, and I direct that if such can be done under and in compliance with the law of the State of New York, that my real property now known as No. 15 West Thirty-First street, shall not be sold during the lifetime of the lease of said property now outstanding and in force.

"Nineteenth—Until the sale of my property, now known as No. 15 West Thirty-First street, or the proceeds thereof otherwise coming into the hands of my executors, I direct that the legacies aforesaid and the trust funds set apart aforesaid shall be paid out of the personal property that I may leave and the income from my real estate in the following order:

"I. The fund for keeping in order my plot and the monument in Woodlawn.

"II. The provision for my nephew, Leonard H. Evarts.

"III. The provision for the children of my nephew, Simpson Shipman, provided for in the eleventh paragraph:

"As to all the other legatees hereinbefore provided I direct that the income from my said property, No. 15 West Thirty-First street, be applied pro rata among them until the sale or other disposition of said property as hereinbefore provided for.

"Twentieth—And I further direct that should my estate prove insufficient to pay said legacies in full I direct that said legacies be reduced pro rata and distribution be made accordingly, except that in no event

shall the trust fund for the maintenance of my plot in Woodlawn be reduced.

"Twenty-First—Should any of the legacies or trusts, hereinbefore provided for be held to be in contravention of the laws of the State of New York, I direct that then and in that event the distribution of the amount therein provided for shall be made according to the statute of descent and distribution of the State of New York."

The will contains no residuary clause, and no disposition is made of the residue of the estate, if there should be any. The lease mentioned in the "eighteenth" paragraph of the will was outstanding at the death of the testatrix, and is yet outstanding. It covers the entire real estate and was drawn for a term of 21 years from the 1st day of May, 1906, at an annual rental of $5,000, payable in monthly installments. It contains provisions for the granting, under certain conditions, of two new consecutive leases of the same lands to the same tenant, at rentals to be determined according to a prescribed plan, each new lease to be also for a term of 21 years, the first to begin at the termination of the present lease, and the second at the termination of the first new lease; also by the present lease the tenant is given an opportunity to purchase the premises, at any time during its term, for a consideration of $125,000.

The will was duly admitted to probate in the county of Barry, in this State, where the testatrix resided at the time of her death, and complainants were appointed its executors. Subsequently, and before beginning this suit, they caused the will to be also admitted to probate in New York, and ancillary proceedings are now pending in that State with complainants as the New York representatives. It is not shown that any steps had been taken, when this suit was begun, towards the sale of the New York property, and it is to be presumed that none had been taken.

The complainants, as executors, file this bill for a construction of the will, alleging doubts and difficulties as to most of its provisions, and asking instructions as to nearly every step to be taken in its administration. They wish to know whether the will directs an equitable conversion of the New York real estate; whether it should be construed in accordance with the laws of Michigan or with the laws of New York; whether it violates the statutes against perpetuities and illegally suspends the power of alienation, and, if it does, whether such illegality affects the entire will; whether the legacies are a charge upon the real estate, or only upon the personal property; whether any residue that there may be will pass under the laws of New York or under the laws of Michigan; and as to the payment of transfer taxes.

The decree appealed from passes upon most of these questions, holding that the directions for the sale of the real estate are mandatory, and work an equitable conversion of that property; that the testatrix intended by the provisions of the will to charge the real estate, as well as the personal estate, with the payment of the legacies; that the executors are authorized to control the real estate in New York, receive and collect the rents, dispossess the tenant for noncompliance with its terms, and thereupon to lease and release the property; that all the trusts are valid, both by the laws of New York and Michigan; that the executors should pay all transfer taxes, whether assessed in Michigan or New York, with all interest or penalties thereon; that the will should be construed according to the laws of New York wherever those differ from the laws of Michigan; and that any residue of the estate not disposed of will pass under and in accordance with the laws of the State of New York.

The executors alone appeal to this court, and the lack of interest on the part of the legatees in the pro-

ceedings is shown by the fact that the only brief before us is that furnished by counsel for the appellants. From an examination of the record we are led to rather doubt whether all of the peculiar features growing out of the present situation of the assets of this estate were fully brought to the attention of the able circuit judge by whom the case was heard.

Until sufficient rents and income from the lands in New York, where ancillary proceedings are being had, shall be received by complainants as Michigan executors, and perhaps not until such lands shall have been sold and the proceeds are in their hands, will there be money enough within the jurisdiction of the courts of this State, or within control of complainants as executors in this State, to satisfy the first preference mentioned in the "nineteenth" paragraph of the will hereinbefore quoted. Whether, even, any part of the limited amount of personal property now here will be left, after payment of the expenses of administration, to be applied upon the legacies, cannot as yet be determined. Practically the entire fund with which to meet the requirements of the will is yet to come, if it comes at all, from real estate in a foreign jurisdiction. Under these circumstances it is somewhat speculative for courts of this State to pass upon the validity of trusts which the executors here have no means of satisfying, and especially is it speculative to pass upon the distribution of a residue that may never exist. It has frequently been held that a court of equity should not attempt to direct the disposition of a fund until it is within the control of the executors asking for the instructions. *Tuttle* v. *Woolworth,* 62 N. J. Eq. 532 (50 Atl. 445) ; *Hughes* v. *Fitzgerald,* 78 Conn. 4 (60 Atl. 694) ; *Meacham* v. *Graham,* 98 Tenn. 190 (39 S. W. 12) ; 40 Cyc. p. 1846.

There is also a still further reason why it was not competent in the decree before us to pass upon the

validity of the trusts in the will, or upon the disposition of any possible residue of the estate coming into the hands of the executors, and not disposed of by the will. Any such residue must necessarily be intestate, belonging to the heirs or next of kin of the deceased, and not to be affected by any action of the court until such heirs and next of kin shall be made parties to the proceedings, and have a chance to be heard. *Lomerson* v. *Vroom,* 42 N. J. Eq. 290 (11 Atl. 13) ; *McKethan* v. *Ray,* 71 N. C. 165; *Stevens* v. *Smith,* 126 Fed. 706 (61 C. C. A. 624) ; 40 Cyc. p. 1851. And as to the several trusts which the will creates, or attempts to create, it is provided by the will itself, in the "twenty-first" paragraph above cited, that in case any of them should be held to be in contravention of the laws of the State of New York, then the money provided by the will for such contravening trust shall be distributed according to the statute of descent and distribution of that State. Undoubtedly those thus alternatively taking should also be parties to the suit, and be heard, should they so choose, as to the validity of the trusts.

But the bill of complaint does not attempt to tell us who are the heirs, or next of kin, of the testatrix, nor who are the distributees of her estate under the laws of New York. No one is made a party to the bill under those designations. Probably the petition for the probate of the will, a copy of which appears in the records, is no proof in this court of the facts therein stated, yet according to that petition there is at least one heir —Simpson Shipman—who is not a party to this suit, and we are not informed as to whether there may or may not be others. We think, therefore, that the court was not in a position to pass upon the validity of the several trusts, nor upon the disposition to be made of a possible intestate residue.

The real question of present importance, however, is, as stated by the circuit judge, the intention of testatrix

as regards the real estate in the city of New York. She could not have failed to realize the immense disparity between the small value of her personal property and the large aggregate bequests she was making. It was unquestionably her intention that these bequests should be paid, so far as was necessary, out of such rents and income as the executors might receive from the real estate, and out of the proceeds arising from the sale of the real estate. She, in fact, directly charges their payment upon such rents and income, and upon the proceeds of such sale, in the "nineteenth" and "twentieth" paragraphs of the will.

It was her intent that the sale should be postponed so long as the present lease might remain outstanding and in force against the property, if that could legally be done, and that during such postponement the executors should receive the rents and income, and apply them in accordance with the terms of the will. Indeed, the right to receive the rents and income was clearly intended to be a condition to the postponement, a part of the scheme for postponement, and if, because of illegality, any portion of this scheme should fail, she intended that a sale of the property should be effected immediately, or as soon as the executors could reasonably accomplish it. When she directs a postponement of the sale during the lifetime of the present lease, she clearly did not intend it to continue during any part of the terms of the succeeding leases provided for in this one, nor necessarily during all the years remaining of the designated term of the present lease. She only intended a postponement so long as this lease should continue outstanding and in force against the land; and whenever it should cease for any reason to continue as an existing lease, she intended that the direction for the sale of the property should be absolute and mandatory.

"The courts of a testator's domicile are justified in

construing the will so far as to determine its intent, no matter where the property may be located. This is for the guidance of the executors there appointed, so far as they may have duties in the premises. The only portion of this will in which they have an immediate interest is that relating to the real estate in New York as a source of funds for the payment of the legacies bequeathed. As to this we have indicated the intent of the testatrix as we understand it.

While the courts of the domicile may, and perhaps ought, to construe a will, even where foreign lands are affected, so far as to discover the intent of the testator, they have no power to determine the effect of such intent, or of such will, upon the title to lands in another State. As was said by the New York court of appeals, in *Knox* v. *Jones*, 47 N. Y. 389, speaking of a somewhat similar situation relative to lands in California:

"Title to real estate can only be acquired or lost agreeably to the law of the place where the same is situated. The tenure, mode of enjoyment, transfer, and descent of real property is regulated by the *lex loci rei sitæ*. Whether, therefore, the trust created by the will is valid, or whether it is void as in conflict with the laws and policy of the State of California, can only be determined by the courts of that State."

It is to the courts of the State of New York, in this case, that the executors must apply for an authoritative determination of their rights and interests in and power over the lands in that State, as given by the will under consideration. *Ford* v. *Ford*, 80 Mich. 42 (44 N. W. 1057) ; *Id.*, 70 Wis. 19 (33 N. W. 188, 5 Am. St. Rep. 117) ; *Clark's Appeal*, 70 Conn. 195 (39 Atl. 155) ; *Carpenter* v. *Strange*, 141 U. S. 87 (11 Sup. Ct. 960) ; *Peet* v. *Peet*, 229 Ill. 341 (82 N. E. 376, 13 L. R. A. [N. S.] 780, 11 Am. & Eng. Ann. Cas. 492). It follows that the circuit court, in the decree appealed from, went too far, in declaring the rights of the exec-

utors in, and their control over, the real estate in New York City. No doubt the ancillary administration in New York will determine all questions as to the transfer of inheritance taxes, if any, in that State, and the duties of the executors in relation thereto. When the fund reaches this State, if it does reach it, any perplexities in that direction can be solved.

The decree of the circuit court will be reversed, and one will be entered in accordance with and to the extent indicated by this opinion, without prejudice to the right of complainants and others interested to reapply to the court at a proper time for a construction of the will as to matters not herein disposed of and as to such further questions as may arise.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

This case having been submitted on briefs, without oral argument, was reassigned after the death of Justice MCALVAY.