ELECTRONIC CITATION:  2011 FED App. 0012P (6th Cir.)
File Name:  11b0012p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:  RICHARD K. MILLER, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| | ) | |
| STATE BANK OF FLORENCE, | ) | |
| | ) | |
| Appellant, | ) | No. 11-8011 |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD K. MILLER, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Western District of Michigan
Case No. 09-90569

Argued:  August 16, 2011

Decided and Filed:  October 5, 2011

Before:  HARRIS, RHODES, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:**  Gregory P. Seibold, SEIBOLD LAW FIRM, Iron Mountain, Michigan, for Appellant.
Robert D. Heikkinen, Marquette, Michigan, for Appellee.  **ON BRIEF:**  Gregory P. Seibold,
SEIBOLD LAW FIRM, Iron Mountain, Michigan, Frederick C. Wieting, HINKFUSS, SICKEL,
PETITJEAN & WIETING, Green Bay, Wisconsin, for Appellant.  Robert D. Heikkinen, Marquette,
Michigan, for Appellee.

---

**OPINION**

---

ARTHUR I. HARRIS, Bankruptcy Appellate Panel Judge. In this appeal, the State Bank of Florence ("Bank") appeals an order of the bankruptcy court denying its motion for relief from stay to continue a foreclosure action against Richard K. Miller ("Debtor"), and denying its objection to confirmation of the Debtor's chapter 13 plan. For the reasons that follow, the order of the bankruptcy court is AFFIRMED.

## I. ISSUES ON APPEAL

The issues presented by this appeal are (1) whether the bankruptcy court erred when it undertook a determination of whether the Bank holds a claim against the Debtor despite the Debtor's lack of written objection to the Bank's proof of claim; (2) whether the bankruptcy court erred in determining that Michigan, not Wisconsin, law applies to the dispute between the Debtor and Bank; (3) whether the bankruptcy court erred when it determined that the Bank's bid in a Michigan foreclosure extinguished the debt owed by the Debtor to the Bank and prevents the Bank from continuing a judicial foreclosure action in Wisconsin; (4) whether the bankruptcy court abused its discretion when it denied the Bank relief from stay; (5) whether the bankruptcy court erred when it determined that the Bank lacks standing to object to confirmation of the Debtor's plan; and (6) whether the bankruptcy court deprived the Bank of its due process rights under the Fifth Amendment to the United States Constitution.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Western District of Michigan has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The bankruptcy court's

order denying relief from stay is a final, appealable order. *Tidewater Fin. Co. v. Curry (In re Curry)*, 347 B.R. 596, 598 (B.A.P. 6th Cir. 2006).

Because it neither confirmed the plan nor dismissed the case, the bankruptcy court's order denying the Bank's objection to confirmation of the Debtor's plan is not final. *Davis v. Green Tree Servicing, LLC (In re Davis)*, 386 B.R. 182, 184 (B.A.P. 6th Cir. 2008) (order which neither confirms a plan nor dismisses the underlying case is not final). However, where appropriate we may, in our discretion, consider the notice of appeal as a motion for leave to appeal and decide the appeal. 28 U.S.C. §§ 158(a)(3), (b); Fed. R. Bankr. P. 8003(c); *DaimlerChrysler Servs. N. Am. LLC v. Taranto (In re Taranto)*, 365 B.R. 85, 87 (B.A.P. 6th Cir. 2007) (citing *Wicheff v. Baumgart (In re Wicheff)*, 215 B.R. 839, 843 (B.A.P. 6th Cir. 1998)). The Bank's motion for relief from stay and its objection to confirmation were decided together following a lengthy evidentiary hearing with the evidence focused on the same underlying issue – the amount of the debt, if any, owed by the Debtor to the Bank as of the date of the bankruptcy filing. To decide the appeal of one portion of the bankruptcy court's order which is clearly final, denial of the motion for relief from stay, and not the other, denial of the objection to confirmation, would be a waste of the parties' and judicial system's resources, nor would it materially advance this litigation. Therefore, we will treat the Bank's notice of appeal as a motion for interlocutory appeal and grant the motion.[1]

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard. *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).

The bankruptcy court's legal conclusions are reviewed *de novo*. *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518 (6th Cir. 2011). "De novo means that the appellate court

---

[1] We do not specifically address here the standards for discretionary appellate review set forth in 28 U.S.C. § 1292(b) because, while instructive, we are not constrained by them. *In re Taranto*, 365 B.R. at 87 (citing *Wicheff*, 215 B.R. at 844; *Moix-McNutt v. Coop (In re Moix-McNutt)*, 212 B.R. 953 (B.A.P. 8th Cir. 1997)).

determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citations omitted).

However, the bankruptcy court's ultimate decision denying relief from stay under 11 U.S.C. § 362 is reviewed for an abuse of discretion. *Spierer v. Federated Dept. Stores, Inc. (In re Federated Dept. Stores, Inc.)*, 328 F.3d 829, 835 (6th Cir. 2003). "'An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'" *Kaye v. Agripool, SRL (In re Murray, Inc.)*, 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (quoting *Volvo Commercial Fin. LLC the Americas v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.)*, 326 B.R. 683, 685 (B.A.P. 6th Cir. 2005)).

## III. FACTS

A.     *The Loans and Mortgages*

The Debtor is a lifelong resident of the area on the Michigan/Wisconsin border near Iron Mountain, Michigan. By 2006, he owned several parcels of real property in the area including one in Wisconsin ("Wisconsin Property") and three in Michigan – the "Moon Lake Property," the "Cabin Property," and three contiguous parcels known as the "3-40 Acre Parcels."

In 2006, the Debtor began suffering from a serious medical condition, became unemployed and eventually permanently disabled. As a result, he sought and obtained loans from the Bank. In order to secure the loans, the Debtor gave the Bank mortgages covering all of his real property except the Cabin Property.

The Debtor signed his first promissory note with the Bank on October 16, 2006, in the original principal amount of $221,444.29 ("2006 Note"). The 2006 Note was secured by a mortgage dated October 16, 2006, on the Wisconsin Property. The mortgage contains a provision, referred to by the Bank as a cross-collateralization provision, which provides that it serves as collateral for "all obligations, debts and liabilities, plus interest thereon, of [the Debtor to the Bank] . . . whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note[.]" (Bankr. Ct. Doc. #120, Ex. S.) Also in October, 2006, the Debtor applied for a $100,000 line of credit with the

Bank. This line of credit was secured by a mortgage dated October 20, 2006, on the 3-40 Acre Parcels.[2] This mortgage did not contain cross-collateralization language.

On January 20, 2007, the Debtor signed another promissory note with the Bank in the principal amount of $400,000 ("2007 Note"). The 2007 Note states that it is secured by a January 20, 2007, mortgage, the October 20, 2006, mortgage, and a January 20, 2006, mortgage.[3] The 2007 Note does not contain a cross-collateralization provision. The properties listed on the January 20, 2007, mortgage are the 3-40 Acre Parcels and the Moon Lake property.

The Debtor remained unemployed, and by 2008 he had defaulted on the loans. Through its Vice President and senior credit officer in charge of foreclosure of mortgages, Clyde Nelson ("Nelson"), the Bank began foreclosure proceedings in both Wisconsin and Michigan.

B.    *The Wisconsin Foreclosure Proceedings*

In April 2008, the Bank, through Wisconsin counsel, commenced a judicial foreclosure action on the Wisconsin Property.[4] On May 14, 2008, the Debtor filed a petition for relief under chapter 13 in the Bankruptcy Court for the Eastern District of Wisconsin. On June 18, 2008, the Debtor voluntarily dismissed his chapter 13 case in order to sell his Moon Lake Property. Shortly thereafter, the Moon Lake Property was sold, and the Debtor paid all net proceeds to the Bank.[5]

---

[2] While the Bank introduced a copy of the application for a line of credit at the hearing on its motion for relief from stay, it did not introduce a copy of the resulting credit agreement. Because the Debtor in fact granted a mortgage on the 3-40 Acre Parcels as collateral for the agreement, the bankruptcy court found that the line of credit, referred to as "Note 2" by the bankruptcy court, was funded, in whole or in part. The bankruptcy court further determined that Note 2 was either paid in full by the Debtor or incorporated into a later loan by the Bank because the Bank offered no evidence that any amount remained owing on Note 2, and the Bank's proof of claim makes no reference to any amount owed under a line of credit. The Bank does not dispute this finding on appeal.

[3] The January 20, 2006, mortgage listed in the 2007 Note as collateral was not introduced into evidence at the hearing on the Bank's motion for relief from stay or any other hearing in this case.

[4] As of December 21, 2007, the Wisconsin Property had an appraised value of $284,000.

[5] The Bank did not offer any proof as to the payment made following the sale of the Moon Lake Property; however, in pre-hearing pleadings, the Bank stated that the sale reduced the Debtor's debt by approximately $315,000.

Following that sale, the Bank believed the Debtor owed unpaid balances on the 2006 and 2007 Notes in the total amount of $413,560.27.

Following the dismissal of the Debtor's first chapter 13 case, the Bank continued its Wisconsin judicial foreclosure action. On July 15, 2008, the Bank obtained a foreclosure judgment from the Wisconsin state court for $407,914.04, plus attorney's fees and costs. The judgment apparently provided that the Wisconsin property would be sold unless the Debtor satisfied the judgment within 12 months. The Debtor did not appear at or defend the judicial foreclosure. He did not satisfy the Wisconsin judgment. The Debtor filed his current chapter 13 case staying any further action in the Wisconsin foreclosure litigation two days before the foreclosure sale scheduled for August 5, 2009.[6] Curiously, the Bank did not introduce a copy of the Wisconsin foreclosure judgment at the hearing on this matter. In fact, the Wisconsin foreclosure judgment is nowhere in the record of this case.

C.    *The Michigan Foreclosure Proceedings*

The Bank retained Michigan counsel to commence a Michigan non-judicial foreclosure by advertisement on the 3-40 Acre Parcels pursuant to the January 20, 2006, and January 20, 2007, mortgages. On April 10, 2008, two notices of foreclosure sales were published scheduling the foreclosure by advertisement sales regarding the two Michigan properties. Each of the notices stated "no other legal or equitable proceedings have been instituted to recover the debt secured by this Mortgage and the power of sale in the Mortgage has become operative by reason of default." (Bankr. Ct. Doc. #151-6, at 13-14.) No sale went forward at that time.

On July 31, 2008, the Bank published a new notice of foreclosure on the January 20, 2007, mortgage on the 3-40 Acre Parcels. That notice scheduled the foreclosure sale for August 8, 2008.[7]

_____

[6] In its earlier opinion denying the Bank's motion to dismiss for improper venue, 433 B.R. 205, the bankruptcy court took judicial notice of the prior Wisconsin chapter 13 case and the Wisconsin state court judgment pursuant to Federal Rule of Evidence 201 and Bankruptcy Rule 9017 stating that the "Bank raised the existence of the Wisconsin chapter 13 case and the Wisconsin state court foreclosure judgment in its opening statement and throughout the hearing. (Trans. at 13 & 22)." *In re Miller*, 433 B.R. at 209 n.1.

[7] The Bank published this notice approximately two weeks after the Wisconsin court issued its foreclosure judgment on the Wisconsin Property.

Again, the notice contained the statement that "no other legal or equitable proceedings have been instituted to recover the debt secured by this Mortgage and the power of sale in the Mortgage has become operative by reason of default." (Bankr. Ct. Doc. #151-6, at 11.)

The foreclosure sale proceeded as advertised on August 8, 2008, and the sole bidder–the Bank–credit bid $413,560.27.[8]  The Bank's credit bid represented the full amount owed by the Debtor to it.  Following the sale, a Sheriff's Deed was recorded, drafted by an attorney for the Bank. The deed stated that the property was sold to the Bank for $413,560.27, and contained an affidavit of the auctioneer, the Dickinson County Sheriff's Department, attesting that the bid had been made by "the [Bank] and that said sale was in all respects open and fair; and that [the sheriff] did strike off and sell said lands and tenements to said bidder, which purchased the said lands and tenements fairly, and in good faith, as deponent verily believes." (Bankr. Ct. Docket #124, Miller's Exhibit List, Ex. 1.)  No party sought to avoid the foreclosure sale following its completion, and the one year redemption period, as extended by 11 U.S.C. § 108, ran approximately 60 days postpetition.

The 2007 mortgage that was foreclosed upon at this sale includes a provision that "any surplus funds, after payment in full of the sums then due under this Mortgage and expenses of the sale, including attorney's fees as provided by law" will be paid to the Debtor. (Bankr. Ct. Doc. #151, Ex. U, at 6.)

D.      *Debtor's Bankruptcy Filing*

On August 3, 2009, in the Western District of Michigan, the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code as well as a chapter 13 plan in which he treated the Bank as a secured creditor holding a claim secured by a mortgage on real property owned by the Debtor in Wisconsin.  The Debtor subsequently amended his plan several times, each time proposing to pay the Bank nothing because he contends that the Bank has been paid in full as a result of its prepetition non-judicial foreclosure of a real property mortgage in Michigan.  At that foreclosure, the Bank credit bid an amount equal to the entire amount owed by the Debtor to the Bank.

---

[8] As of December 21, 2007, the 3-40 Acre Parcels had an appraised value of $300,000.

On July 21, 2010, the Bank filed a proof of claim in the Debtor's case asserting a claim for $441,176.37.[9]  The Debtor has not filed an objection to the Bank's proof of claim.

On July 26, 2010, the Bank filed a renewed[10] motion for relief from the automatic stay "for the purpose of filing an action to undo and reverse a foreclosure by advertisement on certain Michigan real estate securing the Bank's claim and also to proceed with a foreclosure sale of Debtor's Wisconsin residence." (Bankr. Ct. Doc. #105, at 1.)  In its motion, the Bank asserted that the Michigan foreclosure by advertisement sale was prohibited by Michigan law because the Wisconsin foreclosure was pending, and that the Bank should be granted relief from the stay to file suit to undo the Michigan foreclosure.[11]  Additionally, the Bank argued that Wisconsin law, not Michigan law, determines whether the debt reflected in the promissory notes was extinguished by the Michigan foreclosure sale, and therefore, the Bank should be granted relief from stay to allow the Wisconsin court to decide the issues involving the Wisconsin foreclosure judgment.  The Bank maintained that "[w]hen the Bank foreclosed by advertisement on the Michigan real estate, it could do so only for the indebtedness secured by the Michigan real estate.  The loan secured by the Wisconsin residence . . . simply was not part of the Michigan foreclosure and could not be extinguished by the Michigan foreclosure . . . ." (Bankr. Ct. Doc. #121, Bank's Supplemental Brief in Advance of Confirmation/Stay Hearing, at 6-7.) In response to the renewed motion, the Debtor asserted that the Bank had not shown "cause" for relief from the stay because it has no remaining claim against him.

The bankruptcy court scheduled a final hearing on the renewed motion for August 18, 2010. The bankruptcy court commenced the hearing on the renewed motion as scheduled.  However,

---

[9] The proof of claim has not been amended; however, there appears to be no dispute that the total bid at the Michigan foreclosure of $413,560.27 is the total amount owed by the Debtor to the Bank.  This was also confirmed by Nelson's testimony.

[10] The Bank first filed a motion for relief from stay on October 15, 2009.  On November 19, 2009, the bankruptcy court denied the Bank's motion without prejudice to its refiling "after the Bank sells the Michigan real property that it purchased at the foreclosure sale, and the court determines the factual and legal issues regarding the amount of the debt."

[11] M.C.L.A. 600.3204(1)(b) provides that a foreclosure by advertisement may be had only if "[a]n action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage . . . ."

during the hearing the court determined to "continue the hearing and consolidate it, for the purposes of judicial economy and to avoid the possibility of inconsistent results, with the chapter 13 plan confirmation hearing. (Scheduling Order, Aug. 23, 2010, Bankr. Ct. Doc. # 114, at 1.) In its scheduling order, the bankruptcy court identified the legal and factual issues it would decide at the conclusion of the hearing:

> First, it should be noted that the major issue to be determined is the amount of the debt, if any, owed by the Debtor to the Bank as of the filing date. Second, an ancillary issue is whether any debt owed by the Debtor to the Bank has been incurred or increased after the filing. Third, is the Bank entitled to relief from stay or not? Fourth, should the Debtor's plan, as now filed or as may be timely amended, be confirmed?

(Scheduling Order, Aug. 23, 2010, Bankr. Ct. Doc. # 114, at 1.) The bankruptcy court further noted that the evidentiary hearing would continue on September 7, 2010, and directed that any amended plan be filed by not later than September 1, 2010.

On August 25, 2010, the Debtor filed a third amended plan (the "Amended Plan").[12] The Amended Plan provides in part:

> 1. The entire debt owing to the [Bank] is paid in full. In particular, the [Bank] shall have no claim in this case for any money owing on either of the above referenced two notes [the 2006 and 2007 Notes]. In addition, any claim for interest, taxes or insurance re: the foreclosure of the 3-40 acre parcels of land is also precluded in accord with Bank of Three Oaks v. Lakefront Properties, Mich App 551, 444 NW2d 217 (1989).
>
> 2. The [Bank] shall discharge and release any and all mortgages given to secure repayment of the notes with regard to the Debtor's property in Michigan and Wisconsin, in particular the [Wisconsin Property]. . . .
>
> 3. In the event the [Bank] does not release [its] mortgage(s) on the Michigan and Wisconsin property, the Debtor may petition the Court to enforce a release of the mortgage(s) and ask to be awarded actual costs and attorney fees incurred for such purposes.

---

[12] The Debtor filed a fourth amended plan on March 30, 2011. That amendment does not address any issues regarding the Bank's claim.

(Bankr. Ct. Doc. #113, at 2-3.) The Bank timely filed an objection to confirmation of the Amended Plan. To date, no plan has been confirmed.

Beginning on August 18, and continuing on September 7, 2010, the bankruptcy court held an evidentiary hearing on the Bank's renewed motion and objection to confirmation at which the following facts were elicited through Nelson's testimony and numerous exhibits admitted into evidence.[13]

E.    *Bankruptcy Court's Findings of Fact*

At the conclusion of the evidentiary hearing on September 7, 2010, the bankruptcy court took the Bank's renewed motion for relief from stay and objection to confirmation of the Debtor's amended chapter 13 plan under advisement. On January 13, 2011, the bankruptcy court issued a separate written opinion, detailing its findings of fact and conclusions of law, and an order in which it granted the Bank limited relief from stay for the sole purpose of dismissing the Wisconsin foreclosure action with prejudice, but otherwise denied the Bank's motion for relief from stay. The bankruptcy court's order also denied the Bank's objection to confirmation of the Debtor's plan.

Based upon the testimony and exhibits admitted into evidence at the hearing, the bankruptcy court's opinion detailed the background facts, various loans and mortgages, and the circumstances of the Wisconsin and Michigan foreclosures. With respect to the circumstances of the Michigan foreclosure, Nelson testified regarding the Bank's credit bid at the Michigan foreclosure sale. He testified first that the Bank retained Attorney Kruppstadt to handle the foreclosure of the Debtor's property in Michigan. The foreclosure notice advertising the sale for August 8, 2008, was then

---

[13] Shortly after the Debtor filed his chapter 13 petition, the Bank moved to dismiss the case for improper venue. The hearing on the Bank's motion to dismiss for improper venue involved many of the same exhibits and witnesses involved in the later hearing on the Bank's motion for relief from stay and objection to confirmation. In connection with the Bank's motion to dismiss for improper venue, the parties also briefed the issue of the debt, if any, owed by the Debtor to the Bank. In its opinion finding venue to be proper and denying the Bank's motion to dismiss, the bankruptcy court declined to determine the validity or amount of the Bank's claim because a final determination regarding the Bank's claim was not necessary to the venue issue. The bankruptcy court's opinion regarding venue is published at 433 B.R. 205 (Bankr. W.D. Mich. 2010). The bankruptcy court's opinion which is the subject of the appeal presently before us is published at 442 B.R. 621 (Bankr. W.D. Mich. 2011).

prepared by Kruppstadt. Nelson and Kruppstadt discussed the amount owed by the Debtor to the Bank. Nelson advised Kruppstadt that the Debtor owed the Bank a total of $413,560.27 on the 2006 Note and 2007 Note. Nelson, Kruppstadt, and the Bank's Wisconsin counsel then discussed bidding that amount on behalf of the Bank at the foreclosure sale. During their discussions, Kruppstadt advised Nelson that the 2006 Note was not, in his opinion, secured by "any Michigan mortgage."

Kruppstadt then, as the sole bidder at the sale on behalf of the Bank, credit bid $413,560.27. Nelson testified that he understood a credit bid in a Michigan foreclosure sale to be one where a creditor purchases the property at the sheriff's sale without any money actually being transferred. Rather, the creditor bids a certain amount and credits that money against the debtor's account. Such a bid would achieve the same result as if a third party bid at the sale and paid the money. Nelson acknowledged that if a third party had bid $413,560.27 at the sale, the Bank would have cancelled both the 2006 and 2007 Notes and discharged all of the Debtor's mortgages following the redemption period. Nelson further testified that because the Debtor did not redeem the property and the redemption period had passed, the Bank had become the owner of the 3-40 Acre Parcels.

Nelson also testified that it was his position that the 2006 Note was not secured by the 3-40 Acre Parcels sold at the Michigan foreclosure sale, and therefore, the proceeds of the sale did not go toward paying the 2006 Note in any manner. Rather, the Bank credited only the amounts owing on the 2007 Note, which was secured by the mortgage on the 3-40 Acre Parcel. Responding to questions concerning what the Bank then did with the surplus from the Michigan foreclosure sale, Nelson stated that the Bank "did nothing with it . . . it's my belief that Attorney Kruppstadt made a mistake with the bid price, and that's why - - that's why we're here. . . . [I]t was determined that the mistake was made by Attorney Kruppstadt. It was not our intention to have any surplus at the sale. That was made clear to Mr. Kruppstadt." (Transcript of hearing, Sept. 17, 2010, Bankr. Ct. Doc. #130, at 63-5.)

In addition, Nelson testified that while the Bank used the proceeds of the Debtor's sale of his Moon Lake Property to pay down a portion of the outstanding balance on the 2007 Note, it had not waived the remaining indebtedness on that note since the sale of the Moon Lake Property. Moreover, the Bank never intended for its bid at the Michigan foreclosure sale to extinguish the debt owed by the Debtor on the 2006 Note, which was secured by the Wisconsin Property. Nor did the

Bank authorize a bid at the foreclosure sale that would extinguish all of the debt owed by the Debtor to the Bank.

Based on this testimony, the bankruptcy court found that the decision regarding the credit bid was made by Nelson and the Bank's Michigan and Wisconsin foreclosure attorneys, that the Debtor did not take any part in the foreclosure, and that the Bank was the sole participant which exclusively controlled the foreclosure process. As such, the bankruptcy court found that any mistakes in the process were unilateral on the part of the Bank. Furthermore, despite having been advised by counsel that the 2006 Note was not secured by the January 20, 2007, mortgage, which was foreclosed upon at that sale, the Bank bid an amount at the sale equal to the full remaining amount owed to it by the Debtor. Finally, the bankruptcy court found that the Bank failed to credit the full amount of its bid to satisfy the Debtor's loans, but rather credited the Debtor a lessor amount equal to the remaining balance on the 2007 Note only, and that the Bank did not pay any surplus amount to the Debtor.

Nicely summarizing the facts, the bankruptcy court stated:

> Boiled down, the controlling facts are fairly straightforward. The Debtor borrowed a large amount of money from the Bank. The Bank was given mortgages on real property located in Wisconsin and Michigan. After the Debtor defaulted, the Bank instituted a judicial foreclosure on the Wisconsin property and a foreclosure by advertisement on the Michigan property.
>
> The Bank, from its perspective, made a terrible unilateral mistake. It bid the entire amount of its debt in the Michigan foreclosure. The Debtor did not redeem the Michigan foreclosure deed and the Bank now owns the Michigan property. Because the value of the Michigan property is very likely less than what the Debtor owed the Bank, the Bank now wants to continue the Wisconsin foreclosure to reduce or eliminate its monetary loss.
>
> The Debtor's perspective is far different. He asserts all debt owed to the Bank was fully satisfied as a result of the Michigan foreclosure. The Debtor takes the position that he owns the Wisconsin property free and clear of the Bank's prior mortgage; the Wisconsin foreclosure action should be dismissed.

*In re Miller*, 442 B.R. 621, 628-29 (Bankr. W.D. Mich. 2011).

F.      *Bankruptcy Court's Conclusions of Law*

In its detailed, thorough, and ably articulated opinion, the bankruptcy court concluded the following:

1.      Michigan law, not Wisconsin law as argued by the Bank, governs the determination of the dispute between the Debtor and the Bank.

2.      The Bank is legally prohibited from crediting the Debtor with an amount less than its full bid at the Michigan foreclosure sale. And, even if Wisconsin law applied, the result would be the same.

3.      By virtue of its earlier inconsistent position, the Bank cannot argue that the foreclosure on the January 20, 2007, mortgage has no bearing on the 2006 Note. Even if the inconsistent position were permitted, by bidding the total of the two notes at the Michigan foreclosure sale, a surplus equal to the amount of the 2006 Note was created, which must be credited to the benefit of, or otherwise paid to, the Debtor.

4.      The Bank cannot invalidate the Michigan foreclosure sale because Michigan prohibits judicial attacks on foreclosures absent a showing of fraud.

Having so concluded, the bankruptcy court held that the Debtor owed the Bank nothing, and therefore, the Bank did not hold a "debt" or a "claim" against the Debtor. As a result, the bankruptcy court opined that there was no reason to continue the Wisconsin foreclosure and granted the Bank "extremely limited relief from stay solely to permit the Bank to *dismiss with prejudice* the Wisconsin foreclosure lawsuit." *In re Miller*, 442 B.R. at 637. Additionally, because the Bank had no "claim," and therefore, no pecuniary interest at stake in the Debtor's case, the bankruptcy court held that the Bank lacked standing to object to confirmation of the Amended Plan and denied the Bank's objection to confirmation. The bankruptcy court has since delayed holding a confirmation hearing pending the outcome of this appeal.

The Bank's timely appeal of the bankruptcy court's order followed.[14]

---

[14] The Bank sought a stay pending appeal which was denied by the bankruptcy court. Additionally, following the bankruptcy court's order, the Debtor sought approval of appointment of special counsel to pursue a cause of action against the Bank for fraud, breach of contract, abuse of process, violation of state and/or federal banking laws and/or regulations, and intentional infliction of emotional distress. After initially denying the Debtor's request, upon reconsideration, the bankruptcy court granted the motion, with conditions, to appoint special counsel. (*See* Bankr. Ct. Doc. #177.)

## IV. DISCUSSION

### A. *No Objection to Bank's Proof of Claim*

The first issue the Bank asserts on appeal is a procedural one: "Whether the Bankruptcy Court erred by sua sponte undertaking to analyze and decide whether the [Bank] had a claim when the Debtor filed no objection to the [Bank's] proof of claim." (Appellant's Br. at 9.) The Bank asserts that pursuant to 11 U.S.C. § 502(a) and Federal Rule of Bankruptcy Procedure 3001(f), its claim, to which the Debtor did not file a written objection pursuant to Rule 3007(a), is deemed allowed and constitutes prima facie evidence of both the validity and amount of its claim. Pursuant to § 502(b), the Bank contends that the bankruptcy court may determine the enforceability and amount of the claim only if an objection is made. Because the Debtor did not file a written objection to the Bank's proof of claim pursuant to Rule 3007(a), the Bank asserts that the bankruptcy court should not have determined whether the Bank has a claim against the Debtor. Rather, the bankruptcy court should have addressed only whether cause exists to lift the stay, and permit the Bank to continue its Wisconsin foreclosure action.

The Bank further argues that because the Debtor's amended plan, and presumably any objection he might have made to the Bank's claim, sought the discharge of all mortgages granted on both the Michigan and Wisconsin properties, he would have been required to file an adversary proceeding rather than an objection to the allowance of claim alone. The Bank bases this argument upon Rule 3007(b) which provides that a "party in interest shall not include a demand for relief of the kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." Fed. R. Bankr. P. 3007(b). The Bank states that the Debtor's request for discharge of the mortgages would fall under Rule 7001 because Rule 7001 includes determination of the "validity, priority or extent of a lien or other interest in property."

The Bank has forfeited its right to assert this procedural argument because it raised the argument for the first time on appeal. *See Kontrick v. Ryan*, 540 U.S. 443, 124 S. Ct. 906 (2004) (reliance on claim-processing rules forfeited if party asserting rule waits too long to raise issue). The Debtor's amended chapter 13 plan sought a release of all mortgages, including that on the Wisconsin Property, on the grounds that the debt owed to the bank had been paid in full. In objecting to confirmation of the Debtor's plan, the Bank did not raise the procedural argument it now asserts.

-14-

Following the Bank's assertion of its objection to the Debtor's plan, without the procedural argument the Bank now raises for the first time, the bankruptcy court clearly stated in its scheduling order what would be addressed at the consolidated evidentiary hearing on the Bank's objection to confirmation and motion for relief from stay: "First, it should be noted that the major issue to be determined is the amount of the debt, if any, owed by the Debtor to the Bank as of the filing date." (Scheduling Order, Aug. 23, 2010, Bankr. Ct. Doc. # 114, at 1.) The consolidation of matters, such as the motion for relief from stay and objection to confirmation asserted here, was expressly authorized. Fed. R. Bankr. P. 7042 and 9014. Federal Rule of Civil Procedure 42, which applies in contested matters, Fed. R. Bankr. P. 7042 and 9014, grants broad discretion to the bankruptcy court to decide how cases are to be tried "'so that the business of the court may be dispatched with expedition and economy while providing justice to the parties.'" *Iron-Oak Supply Corp. v. NIBCO, Inc. (In re Iron-Oak Supply Corp.)*, 162 B.R. 301, 304 (Bankr. E.D. Cal. 1993) (quoting 9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2381 (1971)). Whether matters involving the same factual and legal questions should be consolidated for trial is a matter within the discretion of the trial court, and the exercise of the court's discretion is reviewed for abuse of discretion. *See Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993); *see also* Federal Rule of Bankruptcy Procedure 7016, which incorporates Federal Rule of Civil Procedure 16, including Rule 16(c)(2)(A) ("[a]t any pretrial conference, the court may consider and take appropriate action on the following matters: (A) formulating and simplifying the issues . . . ."). Therefore, pursuant to Rules 7016, 7042, and 9014, the bankruptcy court did not abuse its discretion when it consolidated for a single hearing the Bank's motion for relief from stay and objection to confirmation and identified the issues to be addressed, including a key issue to deciding both matters – the amount of the debt, if any, owed by the Debtor to the Bank.

In fact, the Bank briefed that very issue in specific response to the bankruptcy court's scheduling order in the Bank's "Supplemental Brief in Advance of Confirmation/Stay Hearing." At no time did the Bank raise the Debtor's lack of written objection to its proof of claim, or the need for the Debtor to initiate an adversary proceeding, as an issue. Rather, fully aware of the issues to be decided, the Bank participated in the evidentiary hearing and introduced exhibits and testimony designed to show that a debt was still owed to it by the Debtor. Only after the bankruptcy court decided that there was no longer any debt owed to the Bank, has the Bank now, belatedly on appeal,

challenged the procedural manner by which this issue was brought before the bankruptcy court. It is simply too late for the Bank to raise this non-jurisdictional procedural argument. *See e.g., Kontrick*, 540 U.S. at 460 ("No reasonable construction of complaint-processing rules, in sum, would allow a litigant situated as [debtor] is to defeat a claim, as filed too late, after the party has litigated and lost the case on the merits.").

Additionally, because the Bank did not raise this issue before the bankruptcy court, it is waived. *See Dealer Computer Servs., Inc. v. Dub Herring Ford*, 623 F.3d 348, 357 (6th Cir. 2010) ("It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.") (quoting *Hood v. Tenn. Student Assistance Corp. (In re Hood)*, 319 F.3d 755, 760 (6th Cir. 2003)); *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990)). Our refusal to consider the Bank's untimely procedural argument will not result in a "plain miscarriage of justice." The Bank knew the bankruptcy court intended to analyze whether the Bank had a claim, and it participated in a full evidentiary hearing with exhibits and testimony designed to attempt to show it indeed held a claim. Permitting the Bank to now attack the procedure by which the issue of the debt was brought before the bankruptcy court, after the bankruptcy court already adjudicated it, would be contrary to the "policy concerns of expeditious administration of bankruptcy matters and the finality of the bankruptcy court's decision . . . ." *Kontrick*, 540 U.S. at 452.

B.    *Choice of Law*

The Bank asserted before the bankruptcy court that Wisconsin law must be applied to the dispute between the Bank and the Debtor because the promissory notes executed by the Debtor contain a provision that the notes would be governed by Wisconsin law where not preempted by federal law. On appeal, the Bank again asserts the language of the promissory notes as grounds for applying Wisconsin law.

Federal courts are split as to whether state or federal law supplies the choice of law rules in bankruptcy cases. *Compare Lindsay v. Beneficial Reinsurance Co. (In re Lindsay)*, 59 F.3d 942, 948 (9th Cir. 1995) ("In federal question cases with exclusive jurisdiction in federal court, such as bankruptcy, the court should apply federal, not forum state, choice of law rules."), *with Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 605-06 (2d Cir. 2001) (concluding that a bankruptcy

court should apply the choice of law rules of the forum state).  *See also Jafari v. Wynn Las Vegas, LLC (In re Jafari)*, 569 F.3d 644, 648- 51 (7th Cir. 2009) (discussing split but concluding that it need not decide between state or federal choice of law rules because Nevada substantive law would apply either way).

As with the Seventh Circuit in *Jafari*, we need not decide whether state or federal law supplies the choice of law rules in this dispute over the validity of the Bank's foreclosure of real property located in Michigan and efforts to set aside the Michigan foreclosure due to the Bank's unilateral error.  Michigan substantive law applies either way.  Under choice of law rules of the forum state – Michigan, it is clear that Michigan law governs the validity of a dispute involving real property located in Michigan.  *See Timber-Lee Evangelical Free Church Christian Ctr. v. Baraga Cnty. Rd. Comm'n*, 145 F.3d 1333 (6th Cir. 1998), No. 96-2288, 1998 WL 228044 at *1 (6th Cir. Apr. 29, 1998) (unpublished table decision) ("Michigan courts follow the principle of *lex loci rei sitae* and apply the law of the state in which the property in dispute is situated . . . .") (citations omitted); *U.S. Truck Co. v. Pennsylvania Surety Corp.*, 243 N.W. 311, 312 (Mich. 1932); *Fuller v. McKim*, 154 N.W. 55, 58 (Mich. 1915).

Under federal choice of law rules, in the absence of any established body of federal choice of law rules, we begin with the Restatement (Second) of Conflict of Laws.  *Medical Mut. of Ohio v. deSoto*, 245 F.3d 561, 570 & n.9 (6th Cir. 2001) (applying federal choice of law rules to action under ERISA, while noting that state choice of law rules would yield same result).  Under Section 229 of the Restatement (Second) of Conflict of Laws, "The method for the foreclosure of a mortgage on land and the interests in the land resulting from the foreclosure are determined by the local law of the situs." *See also* comments a through e of Section 229 of the Restatement (Second) of Conflict of Laws (local law of the situs also governs method and time of foreclosure, effect of foreclosure upon interests in the land, and questions involving the foreclosure which affect interests in the land). Thus, regardless whether state or federal law supplies the choice of law rules, the bankruptcy court correctly determined that Michigan substantive law governs the validity of the Bank's foreclosure of real property located in Michigan, including efforts to set aside the Michigan foreclosure due to the Bank's unilateral error.

C.      *"Undoing" the Michigan Foreclosure Sale*

The Bank's assertion that it should be permitted to seek to "undo" the Michigan foreclosure sale due to its overbid was thoroughly addressed by the bankruptcy court, and the Bank has not cited to this Panel any authority contrary to the bankruptcy court's conclusion that the Bank cannot undo the sale. Contrary to the Bank's assertions, the bankruptcy court concluded that the Bank did not violate the Michigan foreclosure statute by instituting the Wisconsin foreclosure prior to the Michigan foreclosure sale. The Michigan statute prohibits foreclosure by advertisement when another action *at law* has been instituted.[15] Citing to Wisconsin case law explaining that the foreclosure of a mortgage in Wisconsin is a proceeding in equity, the bankruptcy court concluded that the Wisconsin foreclosure proceeding was not a proceeding "at law," but an equitable action. Additionally, because the Bank obtained its default judgment on July 15, 2008, prior to the Michigan sale on August 8, 2008, and did not move to enforce the judgment until a year later, the bankruptcy court concluded the Bank may have "discontinued" its Wisconsin action prior to the Michigan sale. The Bank has not provided this Panel with any support for its assertion that it is entitled to "undo" the Michigan sale due to a violation of the Michigan foreclosure statute.

The bankruptcy court also concluded that the Bank is estopped from challenging its own sale by virtue of taking control or possession of the property, and having its attorney prepare the deed and affidavit of the sheriff confirming the sale. Moreover, the Bank did not act to attack the sale for a year following the sale. The Bank's failure to act timely to challenge the foreclosure sale also prohibits any challenge. *See Worthy v. World Wide Fin. Servs., Inc.*, 347 F. Supp. 2d 502 (E.D. Mich. 2004) (six months between sale and complaint; court rejected attack on sale) *aff'd*, 192 F. App'x 369, 2006 WL 2188931 (6th Cir. 2006); *Jackson Inv. Corp. v. Pittsfield Prods., Inc.*, 413 N.W. 2d 99 (Mich. 1987) (five months between sale and complaint attacking sale was found

---

[15] Mich. Comp. Laws Ann. § 600.3204(1)(b) provides:

> (1) [A] party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage . . . or, if any action or proceeding has been instituted, the action or proceeding has been discontinued . . . ."

untimely).  Finally, the bankruptcy court explained, Michigan law prohibits judicial attacks upon Michigan statutory foreclosures in the absence of a showing of fraud.  *See United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997) ("The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside.").  The Bank has not provided this Panel with any support for its position that its mistaken overbid entitles it to set aside the foreclosure sale.  Because there was no fraud asserted or "peculiar exigency" beyond the Bank's own unilateral mistake and because the Bank failed to act timely, the bankruptcy court correctly concluded that the Bank is not entitled to invalidate the Michigan foreclosure sale.

D.     *Effect of Overbid*

Having concluded that Michigan law governs the dispute, the bankruptcy court analyzed the effect of the Bank's overbid, and concluded that the Bank is legally forbidden from crediting the Debtor with an amount less than its full bid at the Michigan foreclosure sale.  Citing to Michigan jurisprudence, as well as the "mainstream of American jurisprudence," the bankruptcy court explained that if a mortgagee bids more than the value of property purchased, it, like any other purchaser at a mortgage foreclosure sale, is required to pay, or credit the mortgagor, the entire amount of the bid.  *See e.g., Pulleyblank v. Cape*, 446 N.W. 2d 345 (Mich. Ct. App. 1989); *Bank of Three Oaks v. Lakefront Props.*, 444 N.W. 2d 217 (Mich. Ct. App. 1989); *Chrysler Capital Realty, Inc. v. Grella*, 942 F.2d 160 (2nd Cir. 1991) (applying Michigan law); *Shoaff v. Estate of Baldwin*, No. 276469, 2008 WL 2597553 (Mich. Ct. App. July 1, 2008).  A mortgagee who bids the full amount of his debt at a foreclosure sale is prevented from pursuing additional collateral.  *See e.g., Spillman Inv. Grp., Ltd. v. Am. Bank of Tx. (In re Spillman Dev. Grp., Ltd.)*, 401 B.R. 240 (Bankr. W.D. Tex. 2009).  The bankruptcy court then explained further that even assuming for the sake of argument that Wisconsin law applies, the result would be the same because Wisconsin law also provides that a party who overbids at a foreclosure sale will be held to its bid regardless of its unilateral mistake.  *See Metropolitan Life Ins. Co. v. Wilson*, No. 96-2838, 1998 WL 255046 (Wis. Ct. App. 1998); *Horicon State Bank v. Kant Lumber Co., Inc.*, 478 N.W. 2d 26 (Wis. Ct. App. 1991). The Bank has not provided this Panel with any support for its position that it should be relieved of the consequences of its overbid.

E.      *Cross-Collateralization*

The bankruptcy court also addressed and dismissed the Bank's argument that the 2006 Note was not secured by the January 20, 2007, mortgage and that, therefore, the foreclosure on that mortgage has no bearing on the 2006 Note. The bankruptcy court rejected the argument on the ground that the Bank had previously presented sworn testimony that the loans were cross-collateralized by both the Wisconsin and Michigan property. Additionally, even if the Bank were permitted to raise the issue belatedly despite its prior inconsistent position, the bankruptcy court concluded that the Bank's bid at the foreclosure sale created a surplus equal to the amount of the 2006 Note, which must be credited to the benefit of, or otherwise paid to, the Debtor.

On appeal, the Bank asserts that regardless of any earlier testimony of Nelson, the 2006 Note is secured only by the mortgage on the Wisconsin Property, while the 2007 Note is secured by the mortgages on both the Wisconsin Property and the 3-40 Acre Parcels, because only the mortgage on the Wisconsin Property contains cross-collateralization language. Additionally, the 2006 Note identifies only the mortgage on the Wisconsin Property as collateral. Therefore, the Bank asserts that the mortgage which was foreclosed upon in the Michigan sale (the January 20, 2007, mortgage) has "nothing to do with the [2006] Note" and therefore, the "Bank's overbid at the Michigan foreclosure by advertisement could have no impact whatsoever on the Bank's right to proceed with a foreclosure sale on Wisconsin real estate." (Appellant's Br. at 19.)

Our review of the record reveals that the notes and mortgages introduced into evidence at the hearing do in fact support the Bank's position that the 2006 Note was not secured by the mortgage on the 3-40 Acre Parcels which was foreclosed upon in the Michigan foreclosure sale. The January 20, 2007, mortgage contains no cross-collateralization language, and the 2006 Note indeed identifies only the October 16, 2006, mortgage on the Wisconsin Property as collateral.

However, Michigan law states that any surplus proceeds from a foreclosure sale belong to the mortgagor. The Michigan Foreclosure of Mortgages by Advertisement statute states that "[i]f after any sale of real estate . . . there shall remain . . . any surplus money after satisfying the mortgage . . . the surplus shall be paid over . . . to the mortgagor . . . ." M.C.L.A. § 600.3252. And, as the bankruptcy court noted, the Bank's mortgage upon which it foreclosed provides a similar requirement. "Under the [Michigan] statutes, surplus proceeds are to be paid over to the mortgagor,

even though the mortgagee is the successful bidder. A mortgagee who bid on the property cannot escape liability to the mortgagor on the ground that he or she bid more than was necessary." 10A *Michigan Pleading and Practice* § 74:46 (Thomson Reuters, 2d ed. rev. 2010). Therefore, as there is no question that the Bank overbid at the Michigan foreclosure sale, and the Bank is legally forbidden from crediting the Debtor with an amount less than its full bid at the sale, the Debtor has a right to the surplus proceeds.

F.     *Setoff Pursuant to 11 U.S.C. § 558*

Having concluded that the Bank is legally forbidden from crediting the Debtor with an amount less than its full bid at the sale, and that it has not done so, the bankruptcy court found that the Bank is owed no debt, holds no "debt" or "claim" against the Debtor, and lacks standing to object to the Debtor's plan. Therefore, the bankruptcy court denied the Bank's objection to confirmation of the Debtor's plan. The bankruptcy court erred, however, in concluding that the Bank lacked standing to object to confirmation of the Debtor's plan. As of the petition date, the Bank had a valid Wisconsin foreclosure judgment, and the Wisconsin mortgage upon which it was based had not been released. Additionally, as of the petition date, the redemption period in the Michigan foreclosure had not expired. Therefore, the Bank technically has standing to object to the Debtor's amended plan.

Nevertheless, through his proposed amended chapter 13 plan, the Debtor seeks to have the Bank's claim expunged ("the [Bank] shall have no claim in this case") because the Bank has been paid in full by virtue of its bid in the Michigan foreclosure sale. Additionally, he seeks to have the Wisconsin judgment declared satisfied and discharged. We interpret the Debtor's amended plan as seeking a setoff of the Michigan sale credit bid of $413,560.27 against the Wisconsin judgment of $407,914.04, thereby satisfying the Wisconsin judgment.

A setoff is defined as "[a] debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor; the counterbalancing sum owed by the creditor." BLACK'S LAW DICTIONARY 1496 (9th ed. 2009). It "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 289 (1995) (quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528, 33 S. Ct. 806, 808 (1913)). The right of setoff is

recognized by 11 U.S.C. § 553; however, that section applies only when a *creditor* seeks to "offset a mutual debt owing by such creditor to the debtor . . . ." When the *debtor* is seeking to offset a debt, 11 U.S.C. § 558 determines setoff rights. *NRG Options, Inc. v. Ruthrauff, Inc. (In re Ruthrauff, Inc.)*, No. 03-35738, 2005 WL 1420765, *7 (Bankr. W.D. Penn. June 16, 2005) ("Section 558 frequently comes into play when a debtor in bankruptcy objects to a claim filed in the case by a creditor.").

Section 558 provides:

> The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitations, statutes of frauds, usury, and other personal defenses. A waiver of such defense by the debtor after commencement of the case does not bind the estate.

This section preserves to the Debtor defenses, including setoff and recoupment, he would have had prepetition. *e.Spire Commc'ns, Inc. v. Morris Plumbing & Elec. Co. (In re e.Spire Commc'ns, Inc.)*, 293 B.R. 639 (Bankr. D. Del. 2003) (holding debtor entitled to exercise state law right of recoupment under § 558); *In re PSA, Inc.*, 277 B.R. 51 (Bankr. D. Del. 2002) (holding debtor entitled to exercise state law right of setoff under § 558); *Second Pa. Real Estate Corp. v. Papercraft Corp. (In re Papercraft Corp.)*, 127 B.R. 346 (Bankr. W.D. Pa. 1991) (finding that either setoff or recoupment is available as a defense under § 558 and, if established, results in netting out of what each party owes the other).[16]

"[A] right to setoff must be established under state law so that the debtor may then assert the setoff as a defense reserved by § 558." *In re PSA, Inc.*, 277 B.R. at 54. Both Wisconsin and Michigan recognize the right to setoff. Both states recognize that a party may counterclaim based upon setoff. *See* Wis. Stat. § 802.07(1) ("A defendant may counterclaim any claim which the defendant has against a plaintiff, upon which a judgment may be had in the action."); M.C.L.A. § 600.111 ("The term 'counterclaim,' as used in this act, includes setoff and recoupment."). In addition, both Wisconsin and Michigan courts have long recognized a right to setoff both in equity and at law. *Zweck v. D.P. Way Corp.*, 234 N.W.2d 921, 925 (Wis. 1975) (setoff is purely statutory in nature); *Wisconsin Mut. Ins. Co. v. Manson*, 130 N.W. 2d 182, 184-85 (Wis. 1964)

---

[16] Unlike setoff under § 553, setoff under § 558 does not require that the mutual debts both be prepetition obligations. *See In re PSA, Inc.*, 277 B.R. at 53 (citing *In re Papercraft Corp.*, 127 B.R. at 350).

("[A]pplication of the principle of 'equitable set-off' is largely within the discretion of the trial court."); *Piotrowski v. Czerwinski*, 120 N.W. 268 (Wis. 1909) (equitable setoff permitted whenever justice requires it, even if not within statute of setoffs); *Walker v. Farmers Ins. Exch.*, 572 N.W.2d 17, 19 (Mich. Ct. App. 1998) ("Setoff is a legal or equitable remedy that may occur when two entities that owe money to each other apply their mutual debts against each other . . . . In general, absent a statutory mandate authorizing a setoff in a particular circumstance, setoff is a matter in equity."). Accordingly, under either state's law,[17] a court can allow or deny setoff of claims as circumstances warrant.

By virtue of his proposed amended plan provision, the Debtor raised setoff as a defense to the Bank's claim. As both Michigan and Wisconsin recognize the Debtor's right to such a setoff, both at law and in equity, we affirm the bankruptcy court's conclusion that the Debtor owes the Bank nothing pursuant to the application of setoff under § 558. *See Wedgewood Ltd. P'ship I v. Township of Liberty, Ohio*, 610 F.3d 340, 355 (6th Cir. 2010) ("We may affirm on any grounds supported by the record even if different from the grounds relied on by the [bankruptcy] court."). Invoking setoff is discretionary with the bankruptcy court. *Brooks Farms v. United States Dept. of Agric. (In re Brooks Farms)*, 70 B.R. 368, 373 (Bankr. E.D. Wis. 1987) (citing *4 Collier on Bankruptcy*, § 553.02 at 553-11 (15th ed.)). While not expressly articulating the principles of setoff as we have here, the bankruptcy court applied these principles to reach its conclusion that the Debtor owes the Bank nothing, and in so doing, it did not abuse its discretion.

G.    *Relief from Stay and Objection to Confirmation*

Under 11 U.S.C. § 362(d)(1) a party in interest may obtain relief from stay by showing "cause," including the lack of adequate protection in property of such a party in interest. "Cause" for relief from stay is not defined by § 362(d)(1). Therefore, "courts must determine whether discretionary relief is appropriate on a case-by-case basis." *Laguna Assocs. Ltd. P'ship v. Aetna Cas.*

---

[17] As the Debtor's right to setoff is available under either Wisconsin or Michigan law, we need not determine which state's substantive law applies. *See* Restatement (Second) of Conflict of Laws § 229, comment e ("Issues which do not affect any interest in the land, although they do relate to the foreclosure, are determined . . . by the law which governs the debt for which the mortgage was given.").

*& Sur. Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 737 (6th Cir. 1994) (citing *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991)).

Having determined that any challenge to the Michigan foreclosure would be unsuccessful under Michigan law, and that, for all intents and purposes, the Wisconsin judgment is subject to being satisfied by the Debtor's assertion of setoff through his proposed plan, the bankruptcy court did not abuse its discretion in denying the Bank relief from stay to seek reversal of the Michigan foreclosure or to continue its Wisconsin foreclosure proceedings.

Additionally, the bankruptcy court properly overruled the Bank's objection to confirmation of the Debtor's plan as the Debtor has a right to offset the Michigan sale credit bid of $413,560.27 against the Wisconsin judgment of $407,914.04, thereby satisfying the Wisconsin judgment. The bankruptcy court acted properly to deny the Bank the relief it sought to escape the results of its unilateral mistake.

H.    *Due Process*

The Bank raises a variety of inapposite arguments in an attempt to escape the results of its unilateral mistake at the Michigan foreclosure sale. The Bank asserts that the bankruptcy court's actions violated its procedural due process rights because "(1) the Court erred by misapplying the law in denying the Bank's motion to lift the automatic stay; (2) the Court has deprived the Bank of its due process rights by setting the amount of the Bank's Wisconsin judgment to zero without providing the Bank process; and (3) the Bank was denied its due process right to have 'a meaningful hearing' in front of a neutral arbiter." (Appellant's Br. at 38.)

Procedural due process requires that the Bank be afforded "'notice and opportunity for hearing appropriate to the nature of the case'" before its property rights are terminated. *Pittman v. Cuyahoga Cnty. Dept. of Children and Family Servs.*, 640 F.3d 716 (6th Cir. 2011) (quoting *Bell v. Burson*, 402 U.S. 535, 542, 91 S. Ct. 1586, 1591 (1971)).

> The goal is to minimize the risk of substantive error, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. The touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard 'in a meaningful manner.'

*Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996) (citations omitted).

In an attempt to show that it has been denied due process, the Bank simply rehashes why it believes the bankruptcy court's conclusions were in error. Even assuming that the Bank has been denied a property right by the bankruptcy court's order, the Bank has not been denied due process. The Bank was aware that the Debtor sought release of the Wisconsin mortgage in his amended chapter 13 plan. The Bank objected to the proposed plan and sought relief from stay. It was afforded numerous opportunities to present written legal arguments to the bankruptcy court, as well as a full evidentiary hearing at which it presented the testimony of its employee and numerous exhibits. The Bank also fully briefed the issues in connection with its motion to dismiss the Debtor's case for improper venue, and submitted the same exhibits in an evidentiary hearing on that motion. Simply asserting that the bankruptcy court's conclusions were in error does not demonstrate a denial of due process.

The Bank's overarching due process argument appears to be that the bankruptcy court was not a "neutral arbiter." In support of this argument, the Bank asserts that the bankruptcy court mischaracterized the facts, misstated the law, and ridiculed the Bank when it referred to the Bank's argument as a "turnip defense"[18] and stated that the Bank played "fast and loose"[19] with the Michigan foreclosure procedure. It is true that a "fair trial in a fair tribunal is a basic requirement of due process." *Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252, 2259 (2009) (citations omitted). However, circumstances which raise constitutional due process concerns are ordinarily some financial interest in the outcome of the case, or a type of interest which presents a situation which would tempt the average judge "'not to hold the balance nice, clear and true.'" *Caperton,* 129 S. Ct. at 2261 (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S. Ct. 1580 (1986)). Ordinarily,

---

[18] The bankruptcy court referred to the Bank's contention that "*if* this had been a mortgage on Wisconsin real estate and *if* it had foreclosed that mortgage judicially in Wisconsin, *then*, perhaps, a Wisconsin court would have saved the Bank from its unilateral mistake of overbidding by finding that the 'fair value' of the property exceeded the amount of the debt under a particular Wisconsin statute," as the "turnip defense." *In re Miller*, 442 B.R. at 634.

[19] The bankruptcy court stated that any asserted fraud in the Michigan foreclosure procedure was on the part of the Bank which was playing "fast and loose" with the procedure by publishing notices of foreclosure in Michigan which stated, despite the Wisconsin foreclosure proceedings, that no legal or equitable proceedings had been instituted to recover the debt secured by the mortgage.

personal bias or prejudice is alone not a cause for constitutional due process concerns. *See Lavoie*, 475 U.S. at 820-21 (general frustrations of judge toward insurance companies and allegations of resulting bias and prejudice insufficient to establish constitutional violation). The Bank's allegations of lack of neutrality do not rise to the level of a constitutional concern. *See Liteky v. United States,* 510 U.S. 540, 550-56, 114 S. Ct. 1147, 1154-58 (1994) (explaining judicial rulings are not valid basis to show bias or partiality; rulings are grounds for appeal not recusal; "*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display."). The Bank has not asserted that the bankruptcy court had any financial interest in the outcome of the case, or anything beyond, perhaps, a general frustration with the Bank.

Without question, the bankruptcy court provided the Bank with more than sufficient due process. Evidence of this due process is found in the transcript of the evidentiary hearing held by the bankruptcy court, as well as in the bankruptcy court's thorough published opinion.

## V.   CONCLUSION

The Bank made a unilateral mistake by bidding the entire amount owed to it by the Debtor at the Michigan foreclosure sale. It is required by Michigan law to pay, or credit, the Debtor the full amount of its bid. The Bank has conceded that the amount bid was the entire amount owed, and it has, therefore, been paid in full. Pursuant to 11 U.S.C. § 558, the Debtor is entitled to offset the Michigan sale credit bid of $413,560.27 against the Wisconsin judgment of $407,914.04, thereby satisfying the Wisconsin judgment. As such, the Debtor no longer owes the Bank any money, and the bankruptcy court did not abuse its discretion in denying the Bank relief from stay to seek to set aside the Michigan foreclosure sale and to proceed with executing on its Wisconsin foreclosure judgment. In addition, while the bankruptcy court technically erred in overruling the Bank's objection to confirmation of the Debtor's Amended Plan for lack of standing, such error is harmless because consideration of the merits of the objection would also result in overruling the objection as the Debtor is entitled to effect a setoff under his proposed plan. Therefore, the bankruptcy court did not err in overruling the Bank's objection to confirmation of the Debtor's Amended Plan.

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED.